# In the United States Court of Federal Claims

No. 10-263C
(Filed May 23, 2014)

```
* * * * * * * * * * * * * * * * *
                                  *
RICHARD R. WILLIAMS,              *    Board for Correction of Naval Records;
                                  *    separation from service; Board of
              Plaintiff,          *    Inquiry; deference to interpretation of
                                  *    military regulations; judgment on
       v.                         *    administrative record, RCFC 52.1;
                                  *    inadequate explanation by correction
THE UNITED STATES,                *    board; remand, RCFC 52.2.
                                  *
              Defendant.          *
                                  *
* * * * * * * * * * * * * * * * *
```

*Charles W. Gittins*, Middletown, Va., for the plaintiff.

*Joseph A. Pixley*, Commercial Litigation Branch, Civil Division, Department of Justice, with whom were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Donald E. Kinner*, Assistant Director, all of Washington, D.C., for the defendant.

## MEMORANDUM OPINION AND ORDER

WOLSKI, Judge.

      Plaintiff, Richard R. Williams, a former major in the United States Marine Corps, sues the United States under the Tucker Act, 28 U.S.C. § 1491(a), and under the Military Pay Act, 37 U.S.C. § 204(a). Mister Williams began active duty as a Marine Corps officer on May 17, 1985. Admin. R. (AR) at 91. After being convicted by a court-martial of violating the Uniform Code of Military Justice (UCMJ) for committing adultery and engaging in conduct unbecoming an officer and a gentleman,[1] and pursuant to the recommendation of a Board of Inquiry (BOI), he was discharged from the Marine Corps on May 13, 2005. *See* AR at 96.

---

[1] UCMJ Art. 133, 10 U.S.C. § 933; UCMJ Art. 134, 10 U.S.C. § 934.

In his complaint, plaintiff alleges that the Board for Correction of Naval Records (BCNR) acted arbitrarily, capriciously, and contrary to law and regulation when it failed to correct his military record in light of several purported errors which plaintiff claims resulted in his separation from the military only three days before he would have become eligible for retirement benefits. *See* Compl. ¶¶ 33, 35; *see also* AR at 96 ¶ 12(c).[2]  Plaintiff also alleges that he was denied due process based on the errors he claims were committed by the BOI and the BCNR. Compl. ¶ 37. These claims primarily stem from the BOI's consideration of allegedly time-barred conduct in recommending that he be separated, and the BCNR's failure to correct this error. *See, e.g.*, Compl. ¶ 33.

Defendant moved for judgment on the administrative record, arguing that plaintiff could not demonstrate that the BCNR had acted arbitrarily or capriciously in upholding the decision of the BOI. Def.'s Mot. J. Admin. R. (Def.'s Mot.) at 1. In his cross-motion for judgment on the administrative record and response to the government's motion, plaintiff also claims that the BCNR failed to correct several other errors, including the insufficient notice provided to plaintiff regarding the evidence to be considered by the BOI and the BOI's failure to include a statement required by regulation that it did not consider certain evidence when recommending how his military service should be characterized. *See* Pl.'s Opp'n Def.'s Mot. J. Admin. R. & Cross-Mot. J. Admin. R. (Pl.'s Mot.) at 13–16. Finally, Mr. Williams contends that the BCNR acted arbitrarily and capriciously when it failed to address his argument that his separation would constitute an injustice in light of the treatment of other officers convicted of similar offenses. *See id.* at 16–17.

Plaintiff accordingly seeks three days of back pay and the retirement benefits he would have received were he not discharged before his twenty-year retirement benchmark. *See* Compl. at 7–8. For the reasons set forth below, the government's motion for judgment on the administrative record is **DENIED**, plaintiff's cross-motion for judgment on the administrative record is **GRANTED-IN-PART**, and the case is **REMANDED** to the BCNR for further consideration.

---

[2] The Complaint contains several inconsistencies in its citation of dates and time periods. *See, e.g.*, Compl. ¶ 1 (indicating plaintiff was discharged "with 19 years, 11 months and 28 days of active duty service"); *id.* ¶ 22 (referring to plaintiff's "discharge with 19 years, 11 months and 27 days of service"); *id.* ¶ 13 ("Plaintiff was provided orders . . . directing that Plaintiff would be placed on the Retired List on 1 June 2005."); *id.* ¶ 14 ("Plaintiff was delivered a DD 214 that indicated he would be retired . . . effective 1 June 2006 . . . ."). Similarly, while the complaint states that Mr. Williams was separated "two days" short of retirement eligibility, Compl. ¶ 33, it also asks for "three days" of back pay, Compl. at 7. This opinion will refer to dates and time periods as calculated from the documents included in the administrative record.

## I.  BACKGROUND

Mister Williams joined the Marine Corps on May 17, 1985.  AR at 91 ¶ 12(a). The administrative record shows that Mr. Williams was disciplined on three separate occasions during his tenure in the Marine Corps.  First, on October 29, 1999, Mr. Williams received an adverse fitness report after receiving a non-judicial punishment (NJP) for violating an order by misusing his government-issued computer to view pornography.  *See* AR at 20.  In his adverse fitness report for this incident, Mr. Williams's reviewing officer stated, "I believe his mistake was an anomaly of poor judgement [sic], and he will successfully serve the Corps with a renewed sense of commitment."  AR at 290.  It is this first incident which Mr. Williams contends was impermissibly considered by the BOI in recommending his separation from the Marine Corps, in violation of a limitation found in the Secretary of Navy Instructions (SECNAVINST) 1920.6B --- the primary regulations governing the administrative separation of Navy and Marine Corps officers.[3]

In 2002, Mr. Williams was cited a second time for misusing his government-issued computer to view pornography, as well as for lying to the investigating officer about the incident.  *See* AR at 20.  He did not receive an adverse fitness report or any other disciplinary action for this offense.  AR at 84 ¶ 4; *see also* AR at 254–63 (fitness reports from 2002, which do not indicate his 2002 offense).

In June 2004, Mr. Williams engaged in an affair with a fellow officer who was a subordinate in his unit and was also the wife of a fellow officer.  *See* AR at 20, 83. When confronted about this incident, Mr. Williams lied about this relationship in an official statement.  AR at 83.  This incident resulted in Mr. Williams's conviction at a court-martial and ultimately prompted Mr. Williams's referral for separation processing.  *See* AR at 83–84; Compl. ¶¶ 3–9.

### A.  The Court-Martial Proceeding

On July 28, 2004, Mr. Williams was arraigned on four charges related to the adultery incident: violation of UCMJ article 92, violation of UCMJ article 107, violation of UCMJ article 133, and violation of UCMJ article 134.  *See* AR at 57–59. He was then referred to a general court-martial on these charges.  AR at 58 ¶ 14. The court-martial was held on November 12, 2004, February 1, 2005, and February 14, 2005.  *See* AR at 62.  Mister Williams pled guilty to two charges: engaging in conduct unbecoming an officer in violation of UCMJ article 133 and committing adultery in violation of UCMJ article 134.  AR at 61–62.  The court-martial accepted Mr. Williams's plea of guilty to one charge and two specifications of violating UCMJ article 133 (making a false official statement about his adulterous relationship, and

---

[3] All references to SECNAVINST 1920.6B in this opinion are to the December 13, 1999 version in place at the time of plaintiff's BOI.

"wrongfully and willfully develop[ing] an unprofessional relationship of inappropriate familiarity . . . with a subordinate under his command") and one charge and one specification of violating UCMJ article 134 (adultery). AR at 61–62.

The court-martial authority issued a trial report on February 14, 2005, ordering Mr. Williams to forfeit $2000 and ordering that he receive a letter of reprimand. *See* AR at 62, 213. The judgment was to become effective on February 28, 2005, fourteen days after the sentence was announced. AR at 213. The court-martial conviction was sent up the chain of command after being approved by the 2d Marine Aircraft Wing (2d MAW) Commander. *See* AR at 211–12.[4]

## B. The Board of Inquiry Proceeding

On February 18, 2005, four days after his court-martial concluded, the 2d MAW Commander referred Mr. Williams to a BOI to show cause why he should be retained in the Marine Corps. *See* AR at 210–12.[5] Mister Williams received a notification letter, which was dated February 18, 2005, informing him that he had been referred to the BOI because of his court-martial conviction. *See* AR at 65–66. The letter first set forth the "reasons for separation to be considered by the Board,"[6]

---

[4] Mister Williams's court-martial conviction became final on September 23, 2006, after he had already been separated from the Marine Corps. *See* AR at 391. Although he was convicted by court-martial on February 14, 2005, his conviction did not become final until the Deputy Assistant Judge Advocate General for the Navy conducted a formal review of his conviction pursuant to Article 69(A) of the UCMJ and affirmed his conviction. *See id.*

[5] On February 18, 2005, the II Marine Expeditionary Force (II MEF) Commander was designated the "Show Cause Authority" under SECNAVINST 1920.6B ¶ 13(d). *See* AR at 210 ¶ 1. Under this authority, he had the power to delegate the authority to convene a BOI to a subordinate commander. *See* SECNAVINST 1920.6B, encl. (1), ¶ 40. The II MEF Commander delegated this show cause authority to the 2d MAW Commander. *See* AR at 210 ¶ 1; SECNAVINST 1920.6B ¶ 13(d). The II MEF Commander provided Mr. Williams with notification of his Board of Inquiry on February 18, 2005. *See* AR at 65–67.

[6] The "specific reasons" stated in the notification letter were

> substandard performance of duty, misconduct, and moral or professional dereliction as evidenced by one of the following:
>
> a. Failure to demonstrate acceptable qualities of leadership required of an officer of your grade by entering into an adulterous relationship with a female Captain of Marines, the wife of another Captain of Marines.

- 4 -

all of which were charges related to Mr. Williams's court-martial conviction, and then explained that the BOI "is not limited to considering these facts alone, and may consider *any additional facts* concerning the reasons for separation." AR at 65 (emphasis added). The notice did not provide further elaboration about what "any additional facts" meant. The notification letter also went on to explain that the BOI would first make a finding on the reasons for separation, using the preponderance of the evidence standard, and "[i]f the Board finds that one or more of the reasons for separation are supported by sufficient evidence to warrant separation, it may recommend your separation and make an additional recommendation as to the appropriate characterization of service." *Id.*

The 2d MAW Commander made his referral to the BOI with knowledge of Mr. Williams's "mandated retirement date of 1 June 2005," *see* AR at 211, and before Mr. Williams's court-martial conviction had been affirmed on appellate review, *see* AR at 391. Meanwhile, Mr. Williams's twenty-year anniversary of service was May 17, 2005, upon which he could retire with full benefits. *See* AR at 91 ¶ 12(a). He submitted an application for retirement, and on March 9, 2005, the Marine Corps issued him a letter acknowledging that he would retire on June 1, 2005, with full benefits. *See* AR at 87 ¶¶ 3–4. This same letter ordered the preparation of a DD-214 to formally recognize Mr. Williams's retirement. AR at 87 ¶ 6.

The BOI convened on March 22, 2005. AR at 19. According to the BOI report, the BOI considered two "specific reasons for separation" in determining whether Mr. Williams should be retained in the Marine Corps: "(a) Failure to demonstrate acceptable qualities of leadership required of an officer of his grade; and (b) Commission of a military offense which could be punished by confinement of 6 months or more and any other misconduct which would require specific intent for conviction." AR at 19 ¶ 3.

The BOI report recommended that the Secretary of the Navy discharge Mr. Williams and further recommended that he characterize Mr. Williams's service as general (under honorable conditions), reduced from an honorable characterization. *See* AR at 20. In reaching its conclusion, the BOI evaluated three incidents: the 1999 and 2002 pornography incidents and the 2004 adultery incident. *See* AR at 20 ¶ 4. Specifically, the BOI report stated:

> b. Commission of a military offense which could be punished by confinement of 6 months or more and any other misconduct which would require specific intent for conviction, specifically conduct unbecoming an officer and adultery as evidenced by your conviction at general court-martial on 14 February 2005.

AR at 65.

- 5 -

> On the issue of retention, the board also considered two prior incidents of misconduct by the respondent: In 1999 the respondent, as a Major, received NJP and an adverse fitness report for an order violation, misuse of his government computer: viewing pornography. In 2002 the respondent again committed the same order violation: misuse of his government computer by viewing pornography.

*Id.* The report continued, "the respondent admitted all acts of misconduct, including the two prior incidents of misconduct considered on the issue of retention. He admitted that his actions were wrong, but he requested to be retained until retirement." AR at 20 ¶ 5.

The Assistant Secretary of the Navy affirmed the BOI's recommendation after it passed through the chain of command. *See* AR at 83–85. The Commanding General of the 2d MAW, first to endorse the BOI's recommendations, approved the BOI findings but added a comment of his own. *See* AR at 79. He indicated that he agreed with the BOI's recommendation for separation for adultery charges and related offenses, noting also that this was Mr. Williams's third offense and that Mr. Williams had not been rehabilitated after his previous misconduct. AR at 79 ¶¶ 2–3. The commander made his recommendation after reviewing the BOI's findings and the Record of the BOI, *see* AR at 79–80, which contained the BOI transcript highlighting Mr. Williams's 1999 and 2002 acts, *see* AR at 19 ¶ 2 (noting that the Record "is a verbatim transcript of the Board's proceedings"). Specifically, the 2d MAW Commander wrote:

> 2. In addition to the three offenses for which the respondent was convicted of [sic] at a General Court-martial, the BOI record documents that this was Major Williams' third incident of misconduct as a field grade officer. Major Williams received Non-Judicial Punishment [in] 1999 from the Commanding General of II Marine Expeditionary Force in conjunction with misuse of his government computer by viewing pornography. A second incident of similar misconduct was documented by testimony at the BOI. The record establishes that in 2002 Major Williams was again identified as having used his Government computer for the purpose of viewing pornography. Sadly, after this second incident he also chose to lie about the matter when questioned by a senior officer. The evidence establishes that Major Williams ultimately admitted his misconduct after being confronted with the incriminating physical evidence. (See Record of BOI, including pgs 17–26)
>
> 3. Regrettably, Major Williams was not rehabilitated by the results of his first two brushes with authority and misconduct. Most recently, after having served over nineteen years as a commissioned officer, he consciously chose to commit adultery and fraternization with a junior

- 6 -

>officer. This junior officer also happened to be the wife of another subordinate officer in Major Williams' unit. It is also worthy of note that Major Williams was the female junior officer's reporting senior. Finally, after the aggrieved husband brought the allegation of misconduct to light, Major Williams again lacked the moral courage and integrity expected of a Marine Corps officer. He again chose to lie about his misconduct during the investigative process. (See Record of BOI, including Government Exhibits 1–3.)
>
>3. [sic] *After carefully considering all of the facts and circumstances surrounding this case*, I fully concur with the Board's recommendations for separation . . . .

AR at 79–80 (emphasis added). The Record of the BOI, while mentioned in the administrative record before the Court, is not included in the administrative record. *See, e.g.*, AR at 72 (mentioning record as enclosure (3)).[7]

The second endorsement was made by the Commander of the II MEF. *See* AR at 81. Although this commander did not directly identify Mr. Williams's prior acts, he stated that he concurred with the 2d MAW Commander's analysis as well as the BOI findings and recommendations, and also noted that "[t]his officer has a serious character flaw." AR at 81 ¶¶ 2–3.

The third endorsement, by the Commander of the Marine Forces Atlantic, approved the BOI's recommendation for separation without commenting on Mr. Williams's prior acts. *See* AR at 82. This commander added that, "[a]lthough clearly a capable logistician, Major Williams has proven that he lacks the integrity and leadership qualities to be a Marine officer." AR at 82.

The fourth endorsement was made by the Commandant of the Marine Corps. *See* AR at 83. The Commandant began by detailing the chronology of events in Mister Williams's case, beginning with the 2004 adultery incident, and stated that he concurred with the chain of command and recommended that Mr. Williams be separated. *See* AR at 83–84. He further emphasized that "Major Williams' conduct is not a one-time lapse in judgment." AR at 84 ¶ 4. To support his claim, the Commandant referenced both the 1999 and 2002 incidents, stating "Major Williams received non-judicial punishment in 1999 for viewing pornography on his government computer and the Board transcript revealed a second incident of viewing pornography and lying to the investigator in 2002, which did not result in any disciplinary action." *Id.* The Commandant concluded that although Mr. Williams would soon be "retirement eligible," he should be separated from the

---

[7] *See infra*, note 11.

Marine Corps before retirement because "he continues to display a pattern of misconduct and character unsuitable for further service." *Id.*

The final endorsement was made by the Assistant Secretary of the Navy, who on May 2, 2005, approved the recommendations of the chain of command with no recorded comment. *See* AR at 85. Pursuant to the BOI's recommendation and the approval by the Secretary of the Navy, the Marine Corps issued a Form DD-215 on May 5, 2005, two months after Mr. Williams's retirement letter was issued, reducing his characterization from honorable to general (under honorable conditions) and changing Mr. Williams's discharge date from June 1, 2005, to May 13, 2005. *See* AR at 39. Because plaintiff entered the military on May 17, 1985, this modification left him with nineteen years, eleven months and twenty-seven days active duty service, and rendered him ineligible for retirement benefits, *see* AR at 91 ¶ 12(a), 96 ¶ 12(c).

**C.  Review by the Board for Correction of Naval Records**

On September 25, 2008, plaintiff submitted an application to the BCNR challenging the BOI's recommendation that he be separated from the Marine Corps, in which he alleged that the BOI committed "both legal error and injustice" in discharging him a mere three days before his twenty year retirement. Compl. ¶ 22. He petitioned the BCNR to correct his record and allow him to "be retired by reason of completion of 20 years of active duty." AR at 44.

On May 29, 2009, the Military Law Office of the Staff of the Judge Advocate to the Commandant of the Marine Corps ("SJACMC") issued an advisory opinion for the BCNR to consider in making its determination. *See* AR at 5–9. The SJACMC advisory opinion recommended that the BCNR consider whether the BOI committed a substantial procedural error by considering Mr. Williams's 1999 incident. AR at 7 ¶ 4(c). On this issue, the advisory opinion argues that the "1999 incident, being more than five years prior to the initiation of processing for separation was clearly time-barred by [SECNAVINST 1920.6B] and should not have been considered by the BOI on the issue of separation or retention." AR at 8 ¶ 4(d).[8]

The advisory opinion finds support in a district court case, *Seifert v. Winter*, 555 F. Supp. 2d 3 (D.D.C. 2003), which interpreted the time limit in SECNAVINST 1920.6B to at least require a separation board to clearly establish in its record that it did not rely on time-barred conduct as the *primary* reason for making a recommendation to separate. *See* AR at 7 ¶ 4(c); *Seifert*, 555 F. Supp. 2d at 14–15.

---

[8] The instruction referred to by the advisory opinion states: "Performance or conduct identified more than 5 years prior to the initiation of processing for separation under paragraph 2 of this enclosure shall not form the basis for processing under this enclosure." SECNAVINST 1920.6B, encl. (4), ¶ 10.e (1999).

The advisory opinion stated that "there is no way to determine from the record whether any one incident by itself or any combination of the three incidents would have caused the BOI to come to the same conclusion." AR at 8 ¶ 4(e). The opinion highlights the fact that the BOI Recorder began his closing arguments before the BOI by stating: "[T]his whole situation is about a severe pattern of integrity problems. The first incident in '99; NJP for misuse of government computer for porn." *Id.* The advisory opinion also notes that the BOI's purported error was compounded by the endorsements, which specifically referenced the 1999 incident. AR at 8 ¶ 4(f). Based on these findings, the SJACMC opinion advised the BCNR to approve Mr. Williams's application for correction, restore him to the rank of Major, retire him with a general under honorable conditions characterization of service, and issue him back pay. AR at 8 ¶ 5.

Despite the SJACMC's advisory opinion, on March 4, 2010, the BCNR denied Mr. Williams's request for correction and affirmed the BOI's and Secretary of the Navy's decision. AR at 1–4. Plaintiff argues that the BCNR did not seriously consider the legal and regulatory deficiencies identified by the SJACMC and instead cursorily rejected the advisory opinion when denying plaintiff's application. Compl. ¶ 31.

### D.  Plaintiff's Allegations Before the Court

Mister Williams's complaint arises from the BCNR's denial of his application to correct his Forms DD-214 and DD-215. Plaintiff alleges that the BOI denied him due process because it considered time-barred conduct in deciding to recommend that he be separated from the Marines "two days short of his already approved 20 year retirement." Compl. ¶ 37.[9] He also complains that the BCNR acted arbitrarily, capriciously, and contrary to law and regulation in denying his application for correction. Compl. ¶¶ 33, 35. In response to Mr. Williams's claim that the BOI considered time-barred conduct, the government contends that the BOI process is bifurcated into distinct phases, and that the time limitation in question does not apply during the phase in which the BOI decides whether to recommend that an officer be separated or retained. *See* Def.'s Mot. at 10–12; Def.'s Resp. Pl.'s Cross-Mot. J. Admin. R. & Reply Pl.'s Opp'n Def.'s Mot. J. Admin. R. (Def.'s Reply) at 2, 7–8. The government contends that the BOI only considered the allegedly time-barred conduct during the phase in which the restriction does not apply. *See id.*

In addition, Mr. Williams claims that his due process rights were violated because he did not receive adequate advance notification that the BOI could consider facts beyond those related to the 2004 adultery incident. *See* Compl. ¶ 37; Pl.'s Mot. at 14–16. In response, the government argues that the BOI, on the issue

---

[9] *See supra*, note 2.

of retention, may consider facts other than the conduct that formed the basis for convening the BOI, and that the notification letter sent to Mr. Williams informed him that the BOI was "not limited to considering these facts alone [*i.e.*, those related to the 2004 incident] and may consider any additional facts concerning the reasons for separation." *See* Def.'s Mot. at 4–5. Mister Williams contends that the plain language of this statement indicated that additional facts that might be considered would be related to the specific reasons for processing listed in the notification letter. *See* Pl.'s Mot. at 15–16.

Finally, plaintiff argues that the BCNR acted arbitrarily and capriciously by failing to address his claim that his separation was an injustice in light of his years of exemplary service and because he received a more severe punishment than other officers who committed similar offenses shortly before they were eligible to retire, noting that the SJACMC advisory opinion stated that his injustice claim "has some merit." Pl.'s Mot. at 16–17. The government contends that the BCNR was not bound by the advisory opinion and that it did adequately respond to this argument, rejecting it as unpersuasive. Def.'s Reply at 12–13.

**E. Relief Sought**

Plaintiff's request for relief has four elements. Compl. at 7–8. Plaintiff first seeks monetary damages for the following: back pay for three days of active duty in the pay-grade of Major (O-4) and retirement back pay for the same grade "from May 16, 2005, to the date of judgment." *Id.* at 7. Second, plaintiff requests that defendant be ordered to correct his DD-214 to indicate that plaintiff retired with twenty years of service in the Marine Corps. *Id.* at 8. Third, plaintiff seeks attorney's fees. *Id.* Finally, plaintiff seeks any additional relief this Court deems "proper and just." *Id.*

## II. DISCUSSION

**A. Legal Standards**

### *1. Judgment on the Administrative Record*

A motion for judgment on the administrative record under Rule 52.1 of the Rules of the Court of Federal Claims (RCFC) differs from a motion for summary judgment under RCFC 56, as the existence of genuine issues of material fact does not preclude judgment on the administrative record. *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1355–56 (Fed. Cir. 2005); *Fort Carson Support Servs. v. United States*, 71 Fed. Cl. 571, 585 (2006). Rather, a motion for judgment on the administrative record examines whether the administrative body, given all the disputed and undisputed facts appearing in the record, acted in a manner that complied with the legal standards governing the decision under review. *See Fort Carson*, 71 Fed. Cl. at 585; *Greene v. United States*, 65 Fed. Cl. 375, 383 (2005); *Arch Chems., Inc. v. United States*, 64 Fed. Cl. 380, 388 (2005). Factual findings are

based on the evidence in the record, "as if [the Court] were conducting a trial on the record." *Bannum*, 404 F.3d at 1357; *see also Carahsoft Tech. Corp. v. United States*, 86 Fed. Cl. 325, 337 (2009); *Gulf Grp. Inc. v. United States*, 61 Fed. Cl. 338, 350 (2004).

### 2. *Review of Military Decisions*

Claims for back pay brought by former full-time active duty service members in which improper separation has been alleged are within this Court's Tucker Act jurisdiction. *See Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997); *Adkins v. United States*, 68 F.3d 1317, 1321 (Fed. Cir. 1995); *Greene*, 65 Fed. Cl. at 379–80 ("Full-time active duty service members, by virtue of their status, are entitled to the pay of the rank to which they are assigned until they are properly separated from the service. Thus, if a full time active duty service member is wrongfully denied the benefits of that status, he has a cause of action under the Tucker Act, as section 204(a) is money-mandating." (citation omitted)).

The Court of Appeals for the Federal Circuit has explained that the "responsibility for determining who is fit or unfit to serve in the armed services is not a judicial province." *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983); *see also Chappell v. Wallace*, 462 U.S. 296, 301–03 (1983) ("[J]udges are not given the task of running the Army." (quoting *Orloff v. Willoughby*, 345 U.S. 83, 93 (1953))); *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002) (noting that the substance of military decisions is often "beyond the institutional competence of courts to review"). But "even when granted unfettered discretion by Congress the military must abide by its own procedural regulations should it choose to promulgate them." *Lindsay*, 295 F.3d at 1257. This limitation follows because "by their nature the procedures [implemented by the military] limit the military's discretion." *Murphy v. United States*, 993 F.2d 871, 873 (Fed. Cir. 1993). Thus, while the Court of Federal Claims will not review "those specific conclusions of military review boards that speak to the question of whether an officer deserved to be promoted or retained in service," *Lindsay*, 295 F.3d at 1257, it "may appropriately decide whether the military followed [its] procedures," *Murphy*, 993 F.2d at 873. Accordingly, where the military has established procedures for the separation of its members, "a claim for relief based on an alleged failure to follow those procedures states a justiciable controversy." *Cameron v. United States*, 106 Fed. Cl. 551, 560 (2012), *rev'd on other grounds*, 550 Fed. App'x 867 (2013); *see Lindsay*, 295 F.3d at 1257; *Murphy*, 993 F.2d at 873.

A court is limited to overturning the decisions of military correction boards when those decisions are arbitrary, capricious, unsupported by substantial evidence, or contrary to law. *See, e.g.*, *Barnick v. United States*, 591 F.3d 1372, 1377 (Fed. Cir. 2010); *Haselrig v. United States*, 333 F.3d 1354, 1355 (Fed. Cir. 2003); *Sobczak v. United States*, 93 Fed. Cl. 625, 632 (Fed. Cl. 2010); *Greene*, 65 Fed. Cl. at 382. Generally, "military administrators are presumed to act lawfully and in good

faith like other public officers, and the military is entitled to substantial deference in the governance of its affairs." *Dodson v. United States,* 988 F.2d 1199, 1204 (Fed. Cir. 1993); *see also Richey v. United States,* 322 F.3d 1317, 1326 (Fed. Cir. 2003) ("[T]he presumption of regularity . . . attaches to all administrative decisions."); *Wronke v. Marsh,* 787 F.2d 1569, 1576 (Fed. Cir.) (noting that the military should be afforded "great deference" in determining "the continued suitability of . . . a commissioned officer"), *cert. denied*, 479 U.S. 853 (1986). Therefore, a member of the military who has sought relief from a correction board is bound by its decision unless he can "demonstrat[e] by cogent and clearly convincing evidence that the correction board acted arbitrarily, capriciously, contrary to law, or that its determination was unsupported by substantial evidence." *Arens v. United States*, 969 F.2d 1034, 1037 (Fed. Cir. 1992).

When reviewing decisions under the arbitrary and capricious standard, "the scope of review is a narrow one." *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 285 (1974). "[T]he standard of review does not require a reweighing of the evidence, but a determination whether *the conclusion being reviewed* is supported by substantial evidence." *Heisig*, 719 F.2d at 1157. Thus, this court should "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Bowman*, 419 U.S. at 285 (quoting *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416 (1971)). A court "may not supply a reasoned basis for the agency's action that the agency itself has not given," *id.* at 285–86 (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)), but it may "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned," *id.* at 286 (citing *Colo. Interstate Gas Co. v. FPC*, 324 U.S. 581, 595 (1945)).

When the interpretation of military regulations and instructions are at issue, the military's own interpretation must typically be given controlling weight and deference, *see Wronke*, 787 F.2d at 1576, especially if the regulation or instruction has been consistently interpreted over a long period of time*, see United States v. Clark*, 454 U.S. 555, 565 (1982); *Willingham v. United States*, 35 Fed. Cl. 633, 646, *aff'd*, 104 F.3d 374 (Fed. Cir. 1996). Charges of procedural irregularity must fail when the applicable regulations are interpreted by the armed services in a reasonable manner, even though the plaintiff may present another reasonable interpretation of the regulation. *Wronke*, 787 F.2d at 1573; *Willingham*, 35 Fed. Cl. at 646. Thus, where a military regulation is susceptible to equally reasonable constructions, a court may not substitute an alternative interpretation for that chosen by the military service. *Id.* At the same time—as is the case with deference to agency decisions generally—a court may not accept counsel's *post hoc* rationalizations for agency action, but must find support for the agency's action in the decision of the agency itself. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983); *see also Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2166 (2012) ("[D]eference is likewise unwarranted . . . when it appears that the interpretation is nothing more than a convenient litigating

position, or a post hoc rationalizatio[n] advanced by an agency seeking to defend past agency action against attack." (citations and internal quotation marks omitted)); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212 (1988) ("We have never applied the principle of [deference] to agency litigating positions that are wholly unsupported by regulations, rulings, or administrative practice.").

Although the Court of Federal Claims is confined to reviewing the administrative record, *see Metz v. United States*, 466 F.3d 991, 998 (Fed. Cir. 2006), when evaluating the totality of the evidence, a court must take into consideration the entire record, *see Lopez-Velazquez v. United States*, 85 Fed. Cl. 114, 134 (2008) (citing *Dixon v. Dep't of Transp.*, 8 F.3d 798, 804 (1993)).

**B. Analysis**

*1. The Alleged Shortcomings of the BOI and BCNR Decisions*

The first question before the Court is whether the BCNR acted arbitrarily and capriciously in failing to correct Mr. Williams's record in light of his claim that the BOI considered matters that it was not permitted to consider under the military's own regulations. *See* Compl. ¶ 33. This question cannot be answered absent an understanding of the Navy's interpretation of the regulations governing administrative separation.

At the time of Mr. Williams's discharge, the procedure for separating a serviceman from the Marine Corps was governed principally by SECNAVINST 1920.6B, and secondarily by the more particularized Marine Corps Separation Manual (MARCORSEPMAN). Underlying Mr. Williams's argument is his interpretation of one of the "limitations" contained in SECNAVINST 1920.6B, which states: "Performance or conduct identified more than 5 years prior to the initiation of processing for separation under paragraph 2 of this enclosure shall not form the *basis for processing* under this enclosure." SECNAVINST 1920.6B, encl. (4), ¶ 10.e (emphasis added). Mister Williams relies on this limitation to argue that the BOI was prohibited from considering the 1999 incident for which he received an adverse fitness report when considering the issue of his separation or retention because that incident took place more than five years prior to February 18, 2005, the date on which his processing for separation was initiated. *See* Compl. ¶ 26; AR at 65 (Notification of Board of Inquiry dated February 18, 2005).

The SJACMC advisory opinion provided to the BCNR argued that the BOI committed a substantial procedural error by considering Mr. Williams's 1999 incident, maintaining the position that the 1999 incident should not have been considered at all. AR at 7–8 ¶ 4(c)–(d).[10] The advisory opinion explained that the

---

[10] The plaintiff's application to the BCNR raised the more general issue of whether the BOI improperly considered prior conduct, basing his challenge on insufficient

- 13 -

1999 incident was "clearly time-barred" by regulation, AR at 8 ¶ 4(d), and discussed the fact that the BOI Recorder, the BOI Report, and some of the BOI endorsements referenced Mr. Williams's 1999 incident, *see* AR at 7–8. Citing *Seifert v. Winter* as authority, AR at 7 ¶ 4(c), the SJACMC concluded that "there is no way to determine from the record whether any one incident by itself or any combination of the three incidents would have caused the BOI to come to the same conclusion," AR at 7 ¶ 4(e).

The BCNR's response to Mr. Williams's challenge to the BOI decision based on the five-year limitation boils down to two rather cryptic sentences:

> You were not processed for separation on the basis of performance or conduct identified or reported to the Show Cause Authority more than five years prior to the initiation of separation processing. The record of your nonjudicial punishment was not the basis of the separation processing, *and the consideration of that record by the BOI was proper.*

AR at 3 (emphasis added). Counsel for the government attempts to rationalize these seemingly self-contradictory sentences by contending that processing for separation contains several distinct phases. In the first phase, the military considers whether to *initiate* processing for separation, and conduct identified more than five years prior to the initiation of processing cannot form the "basis" of that decision. Under the government's theory, the "basis" is simply the reason or reasons that processing is initiated --- reasons that must be substantiated by the BOI before separation can be recommended. *See* Def.'s Mot. at 10–12; Def.'s Reply at 2, 7–8; Hr'g (Sept. 22, 2011). The second phase is the BOI's consideration of whether to recommend separation or retention of the service member. *See* Def.'s Mot. at 10–12; Def.'s Reply at 2, 7–8; Hr'g (Sept. 22, 2011). The government contends that prior conduct, including conduct more than five years old, may permissibly be considered during this phase so long as such conduct did not form the "basis" for processing --- that is, it was not the reason for which processing was initiated. *See* Def.'s Reply at 8 (citing MARCORSEPMAN Ch. 1004 ¶ 4(a)(2)). Relying on this theory, the government argues that the "basis" for processing in Mr. Williams's case was only his court-martial conviction for adultery and related offenses --- the offenses listed in the notification of processing letter --- not the 1999 and 2002 pornography incidents. *See, e.g.*, Def.'s Mot. at 12; Hr'g (Sept. 22, 2011).

---

notice. *See* AR at 48–50. The Court believes that the issue of time-barred conduct, though raised only by the advisory opinion, was incorporated into the petition for correction as subsumed within the plaintiff's broader allegation that the BCNR erred in considering evidence of prior conduct. This issue was properly before the BCNR and should have been fully addressed in its written statement.

In sum, there is no dispute that the 1999 incident was considered by the BOI on the issue of whether Mr. Williams should be separated from the Marine Corps. *See, e.g.*, Def.'s Mot. at 12 ("On the issue of retention, the BOI 'also considered' Mr. Williams's two prior incidents of misconduct in 1999 and 2002 . . . ."); Compl. ¶ 9, 25–26. The question, however, is whether the consideration of that incident on the issue of retention violates the time restriction in SECNAVINST 1920.6B, enclosure (4), paragraph 10.e, and whether the BCNR acted arbitrarily and capriciously in affirming Mr. Williams's discharge despite the BOI's consideration of the 1999 incident on the issue of retention.

Mister Williams also claims that his due process rights were violated because he did not receive adequate advance notification that the BOI could consider facts beyond those presented in his court-martial hearing. *See* Compl. ¶ 37; Pl.'s Mot. at 14–16. In response, the government argues that the BOI may consider facts other than the conduct that forms the basis for which the BOI was convened on the issue of retention, and that Mr. Williams was given notice that the BOI was "not limited to considering these facts alone [*i.e.*, those related to his court-martial conviction] and may consider any additional facts concerning the reasons for separation" in his notification letter. *See* Def.'s Mot. at 4–5. Mister Williams contends that the plain language of this statement indicates that additional facts that may be considered will be related to the reasons for separation listed in the notification letter. *See* Pl.'s Mot. at 15–16.

Finally, plaintiff argues that the BCNR acted arbitrarily and capriciously by failing to address his claim that his separation was an injustice because the BOI process seemed to be unduly rushed --- as if there was a concerted effort to ensure his separation before retirement --- and because he received a more severe punishment than other officers who committed similar offenses shortly before they were eligible to retire, particularly in light of the fact that the SJACMC advisory opinion noted that his injustice claim "has some merit." Pl.'s Mot. at 16–17. The government again contends that the BCNR was not bound by the advisory opinion and that it did adequately respond to this argument, rejecting it as unpersuasive. Def.'s Reply at 12–13.

### *2. The Sufficiency of the BCNR Decision*

When a Marine Corps officer petitions the BCNR to correct an alleged error in his military records, the BCNR must review "all pertinent evidence of record." 32 C.F.R. § 723.3(e)(1).[11] In denying an application for correction without a hearing,

---

[11] Normally this would include the transcript of the BOI hearing --- known as the Record of the BOI --- which the BOI is required to produce. SECNAVINST 1920.6B, encl. (8), ¶ 2.*l*(1); *see also* AR at 19 ¶ 2 (The Record "is a verbatim transcript of the Board's proceedings."). The report of the BCNR refers to the transcript, but it was not included in the administrative record submitted to the Court. The Court notes

*see* AR at 1 ("[T]he Board for Correction of Naval Records, sitting in executive session, considered your application . . . ."), the BCNR is required to provide a written statement "of the grounds for denial" that "include[s] the reasons for the determination that relief should not be granted, including the applicant's claims of constitutional, statutory and/or regulatory violations that were rejected, together with all the essential facts upon which the denial is based." *See* 32 C.F.R. § 723.3(e)(3)–(4). Further, although the BCNR is not bound to accept the views contained in the SJACMC advisory opinion, it is legally bound to consider the opinion and provide an explanation for any disagreement. 32 C.F.R. § 723.3(e). The BCNR failed to abide by this requirement when it considered Mr. Williams's petition. The BCNR merely offered perfunctory and unsupported conclusions in response to the plaintiff's claims.

For example, despite the SJACMC advisory opinion flagging SECNAVINST 1920.6B as authoritative and offering an interpretation which barred consideration of the 1999 incident, the BCNR did no more than repeat the basic facts and cursorily reject Mr. Williams's claims and the citations to law in the advisory opinion. Its analysis of this issue is limited to the following:

> The [BCNR] concluded that you were processed for separation solely on the basis of your commission of the offenses of which you were convicted by general court-martial. It was clear to the [BCNR] that you would not have been considered for separation but for that conviction. You were not processed for separation on the basis of performance or conduct identified or reported to the Show Cause Authority more than five years prior to the initiation of separation processing. The record of your nonjudicial punishment was not the basis of the separation processing, and the consideration of that record by the BOI was proper. Had there been evidence of preservice misconduct, the BOI would have been permitted to consider that evidence for the purpose of deciding whether to recommend separation or retention, although not on the issue of characterization of service. The [BCNR] concluded that the particularly egregious nature of the misconduct of which you were convicted by general court-martial was more than sufficient by itself to warrant your discharge under

---

that the parties agree that the BCNR need not consult the transcript from the BOI. *See* JSR of Feb. 10, 2012. While it is surprising that the Board would not see a need to consult the BOI record, nevertheless, the parties' jointly stipulated that consideration of the record was not necessary. *Id.* ("[I]nclusion of the verbatim transcript in the record before the BCNR was not required and that the omission of these records from the board's review was not substantively or procedurally improper.") The Court will therefore disregard the Board's failure to consider the record as part of its review.

honorable conditions, with resulting loss of potential retirement
benefits.

AR at 3.

The BCNR offers the conclusory statement, "[y]ou were not processed for separation on the basis of performance or conduct identified . . . more than five years prior to the initiation of separation processing," but fails to account for the BOI's evaluation of all three incidents in recommending discharge, *see* AR at 73; the endorsements which referred to all three incidents, *see* AR at 79–80, 83–85; and the Assistant Secretary of the Navy's apparent reliance on those endorsements in approving his discharge, *see* AR at 85 (approving final endorsement from Commandant of the Marine Corps).[12]  Counsel for defendant explained this excerpt by advancing an interpretation of "basis for processing" that relies on a multi-phase understanding of "processing" that was first put forward by the government in the course of this litigation.  It is far from clear in this excerpt that the BCNR draws a distinction between the decision to consider initiating discharge and the actual processing of the discharge.  If it did in fact draw such a distinction, the BCNR does not articulate its interpretation; appeals to no evidence of a long-standing practice or external authority which justifies the characterization of the initiation of separation as a "phase" distinct from consideration of the separation itself; and fails to defend its interpretation against the alternative understanding put forward by the SJACMC advisory opinion.

The Court is left on the one side with a decision from the BCNR that depends on a regulatory interpretation supported by the government's litigation position in this case.  On the other side there is a contrary interpretation of the applicable regulations from the plaintiff supported by the SJACMC advisory opinion and a district court opinion.  The Court finds that there are at least three possible interpretations of the phrase "conduct identified more than 5 years prior to the initiation of processing for separation . . . shall not form the *basis for processing*," found in SECNAVINST 1920.6B: conduct more than five years old is barred from use (1) as the basis for *initiating* a board of inquiry; (2) in finding that the officer is *eligible* for separation due to the seriousness of the alleged misconduct (as opposed to deciding whether separation is *appropriate*); or (3) in any phase of the "processing for separation."

It bears repeating that a court must defer to the military's own interpretation of its regulations, especially if the regulation has been consistently interpreted over

---

[12] Nor does the BCNR explain how these references to the 1999 incident can be squared with its claim that the "particularly egregious nature of the misconduct" which resulted in Mr. Williams's court-martial was alone sufficient to justify his discharge.

a long period of time. *See Clark*, 454 U.S. at 565; *Wronke*, 787 F.2d at 1576; *Willingham*, 35 Fed. Cl. at 646.  Further, a court "may appropriately decide whether the military followed [its] procedures" as promulgated through regulation, *Murphy*, 993 F.2d at 873, but it will not review "those specific conclusions of military review boards that speak to the question of whether an officer deserved to be . . . retained in service." *Lindsay*, 295 F.3d at 1257.  The Court will not impose its interpretation of the regulation, but is thereby left in the awkward position of trying to reconstruct the BCNR's unspoken interpretation of SECNAVINST 1920.6B so that the Court may evaluate whether either the BOI or BCNR acted consistently with that interpretation.  At the same time, the Court cannot second-guess the BOI's or the BCNR's determination on the merits of Mr. Williams's application, nor will it attempt to divine what evidence led the BCNR to its decision.  *SEC v. Chenery*, 332 U.S. 194, 197 (1947) ("It will not do for a court to be compelled to guess at the theory underlying the agency's action; nor can a court be expected to chisel that which must be precise from what the agency has left vague and indecisive.  In other words, [w]e must know what a decision means before the duty becomes ours to say whether it is right or wrong." (internal quotation marks omitted)).

The BCNR's treatment of the plaintiff's claims of insufficient notice and injustice are equally superficial.  Addressing the issue of notice, the BCNR states without explanation:

> [Y]ou were notified . . . that the BOI was not limited to considering the circumstances of your general court-martial conviction, and that it could consider other matters concerning the basis for separation.  You were on notice that the BOI and reviewing authorities could consider your entire record, to include evidence of prior acts of misconduct.

AR at 3.[13]  With regard to the issue of injustice, the Board simply declared: "The Board carefully considered both the positive and negative aspects of your service.  It was not persuaded that the positive aspects outweigh negative, or that it would be in the interest of justice to grant your request for correction . . . ." AR at 4.

In light of the above, the most appropriate course of action is to remand to the BCNR to further consider plaintiff's application and render a decision that complies with the requirements of 37 C.F.R. §§ 723.3(e)(4). *See Istivan v. United States*, 231 Ct. Cl. 671, 678 (1982) (finding a lack of substantial evidence in support

---

[13] The question of whether Mr. Williams received sufficient notice is itself subsumed in large part by the prior matter of the Navy's interpretation of SECNAVINST 1920.6B.  The language of the notification takes on an entirely different meaning if the regulations are widely understood to allow the consideration of conduct over five-years old in making the narrow separation/ retention decision.

of a correction board decision but also declining to hold that plaintiff was entitled to judgment based on the record before it).

### III.  CONCLUSION

For the reasons stated herein, defendant's motion for judgment on the administrative record is **DENIED**; plaintiff's cross-motion is **GRANTED-IN-PART** insofar as it challenges the adequacy of the BCNR's explanation, and is **DENIED** in all other respects.  This case is **REMANDED** to the BCNR for further consideration.

Pursuant to RCFC 52.2(b), the Court provides the following directions to the parties on remand.

(1)  The remand period shall terminate on **Friday, November 21, 2014**, and proceedings in this case are **STAYED** until that date.  If the BCNR has not issued a decision on or by November 19, 2014, the parties shall follow the procedures set forth in RCFC 52.2(d).

(2)  The BCNR's inquiry shall

(a)  determine the scope of the limitation in SECNAVINST 1920.6B, enclosure (4), paragraph 10.e --- specifically the meaning of the phrase "basis for processing" --- and explain the grounds for this interpretation;

(b)  determine whether the BOI notification given to the plaintiff afforded him sufficient notice of the evidence the BOI would consider in conducting its inquiry; and

(c)  determine whether the plaintiff's separation three days short of retirement eligibility was so inconsistent with the usual practice in similar cases as to constitute injustice.

(3)  The BCNR shall ensure that its written decision articulates the reasons for its judgment with sufficient detail that it is clear that each specific claim raised by Mr. Williams was considered.

(4)  Pursuant to RCFC 52.2(b)(1)(D), defendant shall file a status report on or by **Tuesday, July 22, 2014**, and a second one on or by **Monday, September 22, 2014**, indicating the status of the proceedings before the BCNR.

(5)  When proceedings before the BCNR have concluded, the BCNR shall forward four copies of its decision to the clerk of the Court of Federal Claims pursuant to RCFC 52.2(e).  Within **thirty (30) days** of

the filing of the BCNR's decision, the parties shall then file the notices required by RCFC 52.2(f)(1).

**IT IS SO ORDERED.**

s/ Victor J. Wolski
**VICTOR J. WOLSKI**
Judge
