## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

|  |  |  |
|---|---|---|
| RICHARD R. WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | No. 10-263C |
| | ) | |
| v. | ) | Filed: November 30, 2022 |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Following his court-martial conviction, Plaintiff Richard Williams was involuntarily separated for cause from the United States Marine Corps mere days before he would become eligible for active-duty retirement. The Board for Correction of Naval Records ("BCNR") subsequently denied Mr. Williams' application for relief, finding no error or injustice in his separation. This suit followed. After a total of three remands to the BCNR and Assistant Secretary of the Navy (Manpower and Reserve Affairs) ("ASN"), the matter is again before the Court on the parties' Cross-Motions for Judgment on the Administrative Record. For the reasons discussed below, the Court finds that the BCNR and ASN's decisions upholding Mr. Williams' separation were not arbitrary and capricious or contrary to law. Accordingly, Mr. Williams' Motion is **DENIED**, and the Government's Motion is **GRANTED**.

### I. BACKGROUND

#### A. Findings of Fact

The Court refers to the opinion and order disposing of the parties' first round of dispositive motions for a comprehensive discussion of the facts. *See* Mem. Op. & Order at 3–9 (Wolski, J.), ECF No. 29. In sum, Mr. Williams is a former Major in the Marine Corps, having joined on May

17, 1985.  Admin. R. 3, ECF No. 11-3 (hereafter "AR").[1]   On July 28, 2004, the Marine Corps

charged Mr. Williams with four violations of the Uniform Code of Military Justice ("UCMJ")

related to his adulterous relationship with a subordinate female officer in his unit, who was married

to a fellow Marine Corps officer.  AR 57–59.  After initially concealing the affair, Mr. Williams

admitted to the misconduct following an investigation by his superiors.  AR 83.  He was referred

to a general court-martial and pleaded guilty to two charges: engaging in conduct unbecoming an

officer in violation of UCMJ Article 133 (adulterous relationship with subordinate and false

official statement) and adultery in violation of UCMJ Article 134.  AR 61–62.  The court-martial

accepted the guilty plea, ordered Mr. Williams to forfeit $2,000 in pay, and ordered a letter of

reprimand.  AR 62, 213.

On February 18, 2005, four days after his court-martial conviction, the 2d Marine Aircraft

Wing Commander reported Mr. Williams' court-martial conviction and the Commanding General,

II Marine Expeditionary Force, acting as the Show Cause Authority ("SCA"), referred Mr.

Williams to a Board of Inquiry ("BOI") to show cause why he should be retained in the Marine

Corps.  AR 210–12.  Mr. Williams received a notification letter setting forth the "reasons for

separation to be considered by the [BOI]," namely:

> Substandard performance of duty, misconduct, and moral or professional
> dereliction as evidenced by one of the following:
>
> a.  Failure to demonstrate acceptable qualities of leadership required of an
>     officer of your grade by entering into an adulterous relationship with a
>     female Captain of Marines, the wife of another Captain of Marines.
>
> b.  Commission of a military offense which could be punished by confinement
>     of 6 months or more and any other misconduct which would require specific
>     intent for conviction, specifically conduct unbecoming an officer and
>     adultery as evidenced by your conviction at general court-martial on

---

[1] For ease of reference, citations to the Administrative Record refer to the bates-stamped
page numbers rather than the ECF page numbers.

14 February 2005.

AR 65.  The letter further explained that the facts supporting the referral were "all facts outlined in the report of court-martial conviction," and noted that the BOI was "not limited to considering these facts alone, and may consider any additional facts concerning the reasons for separation." *Id.* At the time he received his notice, Mr. Williams was set to reach 20 years of active-duty service on May 17, 2005, and planned to retire with full benefits on June 1, 2005.  AR 91, ¶ 12(a)–(b); *see* AR 87, ¶¶ 3–4.

The BOI convened to hear Mr. Williams' case on March 22, 2005, and subsequently recommended Mr. Williams be separated from the Marine Corps with a general (under honorable conditions) characterization.  AR 19, 20, 23.  According to its report dated March 29, 2005, the BOI considered two "specific reasons for separation:" (a) "[f]ailure to demonstrate acceptable qualities of leadership required of an officer of his grade;" and (b) "[c]ommission of a military offense which could be punished by confinement of 6 months or more and any other misconduct which would require specific intent for conviction."  AR 19.  The BOI found these reasons were established by the preponderance of evidence.  AR 20.  "On the issue of retention," the BOI also considered two prior incidents of misconduct by Mr. Williams in 1999 and 2002.  *Id.*  These prior incidents both involved Mr. Williams using his government-issued computer to view pornography and, in relation to the 2002 incident, lying to the investigating officer about the incident.  *Id.*  For the 1999 incident, Mr. Williams received non-judicial punishment ("NJP") and an adverse fitness report.  *Id.*

The BOI's recommendation was endorsed by the Commanding General of the 2d Marine Aircraft Wing, the Commanding General of the II Marine Expeditionary Force, the Commander of the Marine Forces Atlantic, and the Commandant of the Marine Corps, and ultimately approved

by the ASN on May 2, 2005.  AR 79–85.  As a result, the Marine Corps changed Mr. Williams'

discharge date from June 1, 2005, to May 13, 2005.  AR 39.  This rendered Mr. Williams ineligible

for full retirement benefits.

### B.   Relevant Regulatory Framework

In the Navy, administrative separation of officers for cause involves a multi-step process

requiring several levels of review.  The process begins when a commanding officer reports

performance or conduct to the SCA that may warrant separation of an officer.  *See* Secretary of

Navy Instruction ("SECNAVINST") 1920.6B, encl. (4), ¶ 1 (Dec. 13, 1999).[2]  The first decision

in the process is made by the SCA, who reviews the report and determines whether the officer

must present a case for retention in the Navy.  *Id.*, encl. (8), ¶ 1.b.  This decision determines

whether further processing for separation will occur (show-cause) or whether the case should be

closed (no show-cause).  *Id.*  If further processing is necessary, the Navy may convene a BOI.  *Id.*

¶ 1.c(2).

A BOI is comprised of three senior grade officers who are tasked with receiving evidence

and making a recommendation regarding separation and/or characterization of service.  *Id.* ¶¶ 2.a,

2.d.  A BOI proceeding is formal and adversarial; thus, the officer is entitled, among other things,

to be represented by counsel, respond to the underlying allegations and confront witnesses, submit

any matter from his or her service record for consideration by the board in making its decision,

and to testify.  *Id.* ¶¶ 2.e–f.  He or she is also entitled to notice.  Specifically, Navy instructions

mandate that an officer "shall be notified in writing at least 30 days before the hearing of his or

---

[2] The Secretary is authorized by statute to issue regulations governing separation of officers for below-standard performance, misconduct, and certain other reasons.  10 U.S.C. § 1181.  At all times relevant to Mr. Williams' claim, SECNAVINST 1920.6B was the pertinent Naval regulation in effect.

her case before a BOI, of each of the reasons for which he or she is being required to show cause for retention in the Naval Service." *Id.* ¶ 2.e.

The same Navy instruction also sets forth certain limitations on separation processing. As relevant here, one such limitation provides that "conduct identified more than 5 years prior to the initiation of processing for separation . . . shall not form the basis for processing under this enclosure."[3] *Id.*, encl. (4), ¶ 10.e. Another limitation addresses pre-service misconduct, providing that a BOI "may consider [such conduct] only for the purpose of deciding whether to recommend separation or retention" and not for "determining the recommendation for characterization of service." *Id.* ¶ 10.d.

Upon the conclusion of a hearing, the BOI must issue a report summarizing its findings and recommendations. *Id.*, encl. (8), ¶ 2.l(1). Specifically, the report must state its findings on each of the reasons for separation specified and, if the reasons are substantiated, its recommendations as to whether the reasons warrant separation for cause and, if so, the specific characterization of service. *Id.* ¶¶ 2.k(1)–(2), 2.l(2)(e)–(f). The BOI's decision is not final; rather, it is forwarded through the chain of command for review and endorsement before being sent to the ASN for a final determination. *Id.* ¶ 2.m; *see* SECNAVINST 1920.6B ¶ 13.a (delegation of authority to ASN).

C.   **Procedural History**

On September 25, 2008, Mr. Williams petitioned the BCNR for a correction of his naval records to show he was retired by reason of completing 20 years of active-duty service. AR 44–

---

[3] SECNAVINST 1920.6B was updated in 2005. *See* SECNAVINST 1920.6C (Dec. 15, 2005). The revised instruction includes identical language for the limitation regarding performance or conduct identified more than five years before the initiation of processing. It clarifies, however, the meaning of the terms "identified" and "initiation of processing." *Id.*, encl. (4), ¶ 11.e.

55. Mr. Williams contended that the BOI committed legal error by considering his prior incidents of misconduct and that his discharge a matter of days before his planned retirement constituted a gross injustice.  AR 49–54.  The BCNR rejected these arguments.  AR 3.  In doing so, it also rejected an advisory opinion issued by the Military Law Division of the Staff Judge Advocate to the Commandant of the Marine Corps ("SJACMC").  AR 1, 9.  The advisory opinion concluded that the BOI should not have considered Mr. Williams' prior misconduct because it was time-barred by the limitation in SECNAVINST 1920.6B, encl. (4), ¶ 10.e.  AR 7–8.  The SJACMC largely based its opinion on the holding in *Seifert v. Winter*, 555 F. Supp. 2d 3 (D.D.C. 2003), and recommended that the BCNR correct Mr. Williams' record to reflect his retirement with a general (under honorable conditions) characterization.  AR 8.

Mr. Williams sought review in this Court on April 28, 2010.  *See* Pl.'s Compl., ECF No 1. In May 2014, the Court resolved the parties' first cross-motions for judgment on the administrative record, granting-in-part Mr. Williams' motion and remanding the case to the BCNR for further explanation of its decision.  *See generally* ECF No. 29.  In particular, the Court directed the BCNR to explain its interpretation of the time-barred misconduct limitation in SECNAVINST 1920.6B and the apparent conflicting interpretation advanced by the SJACMC, as well as explain the BCNR's holdings on injustice and the adequacy of BOI notification.  *Id.* at 16–19.

On remand, a different BCNR panel issued a decision agreeing with the original BCNR panel.  *See* BCNR Dec. on Remand, ECF No. 33.  The remand panel explained that the limitation in SECNAVINST 1920.6B prohibiting time-barred misconduct from being "a basis for processing" prevented a SCA from basing his or her decision to initiate separation processing on such time-barred conduct, but it did not prohibit a BOI from considering such evidence when determining whether to retain or separate the officer.  *Id.* at 2–3.  The panel noted that the updated

language in SECNAVINST 1920.6C clarified the matter and, if the revised instruction had been in effect at the time, "would have [made it] clear that the BOI's consideration of [Mr. Williams'] history of NJP was not time barred." *Id.* at 3.  It further explained that Mr. Williams did not receive inadequate notice of the matters to be considered at his BOI because the notice advised Mr. Williams that the BOI "could consider other matters concerning the bases for separation." *Id.* at 4.  The remand panel also noted that Mr. Williams did not object to consideration of his prior misconduct either at the hearing or in his rebuttal to the BOI's report. *Id.*  Similarly, it was not persuaded that separation a mere days before Mr. Williams' retirement constituted an injustice.  It compared Mr. Williams' punishment to the harsher treatment of the female officer involved in the same misconduct and determined Mr. Williams was not treated disparately. *Id.* at 5.

Following the first remand, the parties began briefing a second round of dispositive motions.  Before briefing concluded, the Court granted the parties' joint motion for a second remand, this time to the ASN.  The remand order directed the ASN to, among other things, explain the Secretary's delegation of authority to the BCNR to correct certain Naval records as provided in SECNAVINST 5420.193, encl. (1), § 6.e(1)(a) (Nov. 19, 1997), which according to Mr. Williams required the BCNR to forward his case to the ASN for final approval before denying his application for relief. *See* Jt. Mot. for Remand, ECF No. 65; Order (Aug. 21, 2015), ECF No. 66; Jt. Mot. for Permission to Communicate Issues to ASN, ECF No. 68; Order (Oct. 13, 2015), ECF No. 69.  The Court also instructed the ASN to consider any information provided by Mr. Williams on remand and to correct any alleged errors in the BCNR's consideration of Mr. Williams' application.  ECF No. 69 at 1.

On September 18, 2015, counsel for Mr. Williams submitted a letter to the ASN setting forth several alleged legal errors and injustices committed by the BOI and BCNR. *See* Encl. 1 to

7

Pl.'s R. 52(f)(1) Submission, ECF No. 71-1.  Among other arguments, the letter cited to other allegedly analogous cases of officers who committed adultery but who, unlike Mr. Williams, were not separated for cause.  *Id.* at 5–6.  On September 28, 2015, after the submission deadline, counsel for Mr. Williams submitted a supplemental letter, including a BOI script published in the Marine Corps Manual for Legal Administration ("LEGADMINMAN"), Marine Corps Order ("MCO") P5800.16A, Fig. 4-20 (Feb. 10, 2014).  *See* Encl. 2 to Pl.'s R. 52(f)(1) Submission, ECF No. 71-2.  Counsel asserted that the script demonstrates that SECNAVINST 1920.6C's time-barred misconduct limitation prohibits a BOI from considering—for any reason—conduct occurring five years before the initiation of processing.  *Id.* at 3.  The script states:

> SRMBR: [Read if performance or conduct identified more than five years prior to the initiation of processing for separation has been introduced] The board is advised that SECNAVINST 1920.6C imposes a limitation on considering performance or conduct identified more than five years prior to the initiation of processing for separation . . . . The board will affirmatively state on the findings and recommendations worksheet that the board did not consider such evidence.

*Id.* at 6.

The ASN issued his remand decision on November 18, 2015.  *See* ASN's Mem. for the U.S. Court of Federal Claims, ECF No. 70.  The ASN explained that, under SECNAVINST 5420.193, encl. (1), ¶ 6.e(1)(a), final approval by the ASN is required only in cases where the BCNR recommends corrective action—as opposed to where it denies relief—inconsistent with comments of proper naval authorities.  *Id.* at 1–2.  The ASN further stated that he did not find procedural or substantive error by the BCNR in denying Mr. Williams' application, nor did he find that Mr. Williams' separation constituted an injustice.  *Id.* at 2–9, 11.  Consistent with the remand panel's decision, the ASN explained the Navy's and Marine Corps' interpretation and practice related to the time-barred misconduct limitation in SECNAVINST 1920.6B and concluded that Mr. Williams' BOI properly complied with the instruction.  *Id.* at 2–7.  He also determined that

Mr. Williams received proper notice.  *Id.* at 7–8.  And he disagreed that the purportedly analogous cases referred to by Mr. Williams' counsel established any usual practice of the BCNR in similar cases or showed that the BCNR treated Mr. Williams disparately.  *Id.* at 8–9.  The decision also responded to the other arguments raised in Mr. Williams' timely letter on September 18, 2015.  *Id.* at 9–11.  It did not, however, address the BOI script attached to Mr. Williams' untimely supplemental submission on September 28, 2015.

Unsatisfied with the ASN's decision, Mr. Williams sought another remand.  *See* Mot. for Remand, ECF No. 76.  The Court agreed that a third remand was appropriate but only to provide additional information on the BOI script submitted to the ASN, and any other applicable scripts, and to reconcile the script's characterization of the time-barred misconduct limitation in SECNAVINST 1920.6C with the ASN's interpretation of the substantively identical limitation in SECNAVINST 1920.6B.  Mem. Op. & Order at 15–16, ECF No. 96.  Regardless of whether such script was used in Mr. Williams' BOI or is binding on the ASN, the Court reasoned that it was relevant to analyzing the reasonableness of ASN's interpretation and should be addressed by the ASN in the first instance.  *Id.* at 9–11.

On May 28, 2021, the ASN issued a second remand decision.  *See* Mem. for the U.S. Court of Federal Claims, ECF No. 99.  The ASN explained that, while arguably contradictory due to poor drafting, the BOI script is not mandatory authority.  *Id.* at 1.  Rather, it is a "U.S. Marine Corps publication intended to assist U.S. Marine Corps commands in executing various legal duties . . . and is not a substitute for the substantive regulation provided in SECNAVINST 1920.6B or 1920.6C."  *Id.*  The ASN further explained that even if the script were mandatory, the poorly drafted language does not necessarily contradict SECNAVINST 1920.6B or 1920.6C because it merely notes that there is a limitation on the BOI considering time-barred prior misconduct, but it

does not discuss the full scope of the limitation.[4] *Id.*

### D.     The Parties' Current Cross-Motions

On September 30, 2021, Mr. Williams filed the instant Motion for Judgment on the Administrative Record.  *See* Pl.'s Mot. J. Admin. R., ECF No. 110.  Mr. Williams continues to contend that the BCNR's and ASN's decisions are arbitrary and capricious, as well as contrary to law, because pursuant to SECNAVINST 1920.6B the BOI should not have considered his 1999 NJP or 2002 misconduct in recommending his separation from the Marine Corps.  *Id.* at 16.  He also continues to challenge the BCNR's and ASN's decisions finding that he had adequate notice that the BOI could consider time-barred misconduct at the hearing.  *Id.* at 14.  Mr. Williams further challenges the ASN's interpretation of the BCNR's delegated authority, arguing that the BCNR violated SECNAVINST 5420.193 by denying him relief without first submitting its decision to the ASN for his review and decision.  *Id.* at 9.  Lastly, he contends the BCNR and ASN acted arbitrarily and capriciously by failing to consider analogous cases of officers who allegedly received more lenient treatment.  *Id.* at 25.

On December 21, 2021, the Government filed its combined Opposition and Cross-Motion for Judgment on the Administrative Record.  *See* Gov't's Mot. J. Admin. R., ECF No. 113.  It contends that the BCNR's and ASN's decisions were not arbitrary and capricious or contrary to law.  The motions are now fully briefed.  *See* Pl.'s Reply, ECF No 115; Gov't's Reply, ECF No. 118.  The Court held oral argument on August 5, 2022.

---

[4] The ASN also addressed a separate script identified by the Government earlier in the litigation as being in effect at the time of the BOI.  The ASN clarified that U.S. Navy Judge Advocate General Instructions ("JAGINST") 5830.1 does not apply to BOIs tasked with determining whether an officer should be retained on active duty—*i.e.*, "show cause board[s]." ECF No. 99 at 2.  It is, thus, irrelevant to Mr. Williams' case.

## II.  LEGAL STANDARD

Rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC") governs motions for judgment on the administrative record.  Such motions are "properly understood as . . . an expedited trial on the record."  *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005).  In contrast to the standard for summary judgment, "the standard for judgment on the administrative record is narrower" and involves determining, "given all the disputed and undisputed facts in the administrative record, whether the plaintiff has met the burden of proof to show that the [challenged] decision was not in accordance with the law."  *Martinez v. United States*, 77 Fed. Cl. 318, 324 (2007) (citing *Bannum*, 404 F.3d at 1357).  For this reason, a genuine issue of disputed fact does not prevent the Court from granting a motion for judgment on the administrative record.  *See Bannum*, 404 F.3d at 1357.

In military pay cases, the scope of judicial review is deferential.  A court will not disturb a decision rendered by a correction board unless the decision is "arbitrary, capricious, contrary to law, or unsupported by substantial evidence."  *Barnes v. United States*, 473 F.3d 1356, 1361 (Fed. Cir. 2007).  A decision is arbitrary and capricious when the agency decision maker "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *see Metz v. United States*, 466 F.3d 991, 998 (Fed. Cir. 2006) ("[W]hen a service member does pursue . . . relief [from a military correction board], the Court of Federal Claims reviews the Board's action under the same [Administrative Procedure Act] standard as any other agency action." (citing *Martinez v. United States*, 333 F.3d 1295, 1314 (Fed. Cir. 2003))).

The Court's review is limited to the administrative record. *Metz*, 466 F.3d at 998. Therefore, the record must contain evidence of legal error or deficiency in the decision-making process, meriting judicial relief and "overcom[ing] the strong, but rebuttable, presumption that the administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith." *Doe v. United States*, 132 F.3d 1430, 1434 (Fed. Cir. 1997) (quoting *Sanders v. United States*, 594 F.2d 804, 813 (Ct. Cl. 1979), *superseded by statute on other grounds*). The burden is on the plaintiff to prove such error through "cogent and clearly convincing evidence." *Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed. Cir. 1986) (quoting *Dorl v. United States*, 200 Ct. Cl. 626, 633 (1973), *cert. denied*, 414 U.S. 1032 (1973)).

Beyond the presumption that military administrators lawfully discharge their duties, "[j]udicial deference must be 'at its apogee' in matters pertaining to the military and national defense." *Voge v. United States*, 844 F.2d 776, 779 (Fed. Cir. 1988) (quoting *Rostker v. Goldberg*, 453 U.S. 57, 70 (1981)); *see Murphy v. United States*, 993 F.2d 871, 872 (Fed. Cir. 1993). Nevertheless, not every claim arising from a military decision is beyond judicial review. *Adkins v. United States*, 68 F.3d 1317, 1323 (Fed. Cir. 1995). Even where Congress provides unlimited discretion, the military is "bound to follow its own procedural regulations if it chooses to implement some." *Murphy*, 993 F.2d at 873 (citing *Sargisson v. United States*, 913 F.2d 918, 921 (Fed. Cir. 1990)); *see Fisher v. United States*, 402 F.3d 1167, 1177 (Fed. Cir. 2005); *see also Voge*, 844 F.2d at 779 ("[T]he Claims Court may review the [challenged decision] process for compliance with established procedures."). Accordingly, where procedural violations are alleged, "this [C]ourt does not improperly exercise any discretion reserved for the military" but rather determines only whether the challenged action violated applicable statutory and regulatory standards. *Adkins*, 68 F.3d at 1323.

When the interpretation of military regulations and instructions are at issue, the military's own interpretation must typically be given controlling weight and deference, especially if the regulation or instruction has been consistently interpreted over a long period of time. *See Wronke*, 787 F.2d at 1576; *United States v. Clark*, 454 U.S. 555, 565 (1982); *Willingham v. United States*, 35 Fed. Cl. 633 (1996), 646, *aff'd*, 104 F.3d 374 (Fed. Cir. 1996). This is consistent with the general principle that "[d]eference to an agency's interpretation of its own regulations is broader than deference to the agency's construction of a statute, because in the latter case the agency is addressing Congress's intentions, while in the former it is addressing its own." *Cathedral Candle Co. v. U.S. Int'l Trade Comm'n*, 400 F.3d 1352, 1364 (Fed. Cir. 2005) (citing *Am. Express Co. v. United States*, 262 F.3d 1376, 1382–83 (Fed. Cir. 2001)); *see Kisor v. Wilkie*, 139 S. Ct. 2400, 2412 (2019). "If a regulation is clear on its face, [however,] no deference is given to the promulgating agency's interpretation, as [courts] interpret the regulation in accordance with its clear meaning." *Viraj Grp. v. United States*, 476 F.3d 1349, 1355 (Fed. Cir. 2007).

### III. DISCUSSION

The thrust of this action concerns the application of various military regulations and allegations that the BCNR and ASN acted arbitrarily and capriciously. Having reviewed the applicable regulations and the administrative record, the Court finds that Mr. Williams is not entitled to judgment. First, the BCNR and ASN did not err in finding that the BOI appropriately considered Mr. Williams' prior misconduct for a limited purpose not inconsistent with SECNAVINST 1920.6B. Second, the BCNR and ASN did not err in finding that Mr. Williams received sufficient notice of his BOI hearing because under the applicable statute and military regulations he was entitled only to notice of the reasons underlying the basis for processing, not all evidence relevant to the matter of retention. Third, the ASN correctly determined that

SECNAVINST 5420.193 did not require the BCNR to forward its denial decision to the ASN for a final determination and, in any event, no prejudice resulted.  Lastly, the BCNR and ASN rationally rejected Mr. Williams' injustice argument because the allegedly analogous cases of officers treated more leniently were not probative.

### A.      The BCNR and ASN Did Not Err in Finding that the BOI Was Permitted to Consider Mr. Williams' Prior Misconduct on the Question of Retention.

The parties first dispute whether the BCNR and ASN acted arbitrarily and capriciously or contrary to law in determining that the BOI appropriately considered Mr. Williams' prior incidents of misconduct in 1999 and 2002 on the issue of retention.  At the center of this dispute is SECNAVINST 1920.6B's time-barred misconduct limitation, which prohibits "conduct identified more than 5 years prior to the initiation of processing for separation" from "form[ing] the basis for processing."  SECNAVINST 1920.6B, encl. (4), ¶ 10.e.  As the Court previously held, "there are at least three possible interpretations" of this limitation.  ECF No. 29 at 17.  It could either preclude the use of time-barred misconduct "(1) as the basis for *initiating* a [BOI]; (2) in finding that the officer is *eligible* for separation . . . (as opposed to deciding whether separation is *appropriate*); or (3) in any phase of the 'processing for separation.'"  *Id.* (emphasis in original).  Because the provision is ambiguous, the task of this Court to determine whether the Navy's interpretation, as explained by the BCNR and ASN on remand, is reasonable.  *See, e.g.*, *Wronke*, 787 F.2d at 1573.

According to the BCNR and ASN, the phrase "basis for processing" refers to the SCA's bases for initiating separation processing by referring an officer to the BOI.  ECF No. 33 at 1–3; ECF No. 70 at 2.  Similarly, the term "identified" means that conduct or performance was brought to the attention of the SCA for a decision on whether it warranted the initiation of processing.  ECF No. 33 at 3.  As the BCNR noted, the Navy subsequently revised the time-barred misconduct limitation in SECNAVINST 1920.6B to clarify its meaning.  *Id.*  The revision, found in

SECNAVINST 1920.6C, adds definitions for the terms "identified" and "initiation of processing." Specifically, it provides that conduct is "'identified' when it is reported to the respective Service's Show Cause Authority" and that "'[i]nitiation of processing' . . . occur[s] when officers are officially notified of administrative separation processing by the respective Service's Show Cause Authority." SECNAVINST 1920.6C, encl. (4), ¶ 11.e. As explained by the BCNR, the revised language makes clear that the limitation pertains to the conduct or performance on which the SCA may base the referral of an officer to a BOI for a show cause hearing. ECF No. 33 at 3. The phrase "basis of processing" is not so broad as "to be synonymous with 'basis for separation' and/or a 'matter considered on the issue of retention.'" *Id.*

Concurring with the BCNR, the ASN further explained that the Navy's interpretation of SECNAVINST 1920.6B is also consistent with its "longstanding practice." ECF No. 70 at 2. According to the ASN, BOIs and other separation authorities have historically "consider[ed] the officer's entire record of service, good and bad, on the issue of whether the officer should be retained or separated." *Id.* Indeed, SECNAVINST 1920.6B specifically "permits the presentation of evidence of *pre-service* misconduct for purposes of determining whether the BOI should recommend retention or separation." *Id.* at 3 (emphasis in original).

The Court finds the Navy's interpretation reasonable for several reasons. First, it is not inconsistent with the plain language of the regulation. The Court agrees with Mr. Williams that "basis" is essentially synonymous with "reasons," but there is no textual evidence in the instruction to suggest that "for processing" must necessarily be read as referring to all phases of separation processing, including the BOI's recommendation on retention. ECF No. 110 at 18, 20–21. Mr. Williams supports his reading by looking outside the Naval instruction to the definition of "separation processing" in the Marine Corps Separation and Retirement Manual

("MARCORSEPMAN"), which states that processing is initiated upon written request or notification and is not complete until the separation authority takes final action. MCO P1900.16F, ¶ 1002(52) (July 18, 2003). But the interpretive question is not what constitutes processing, and it is undisputed that separation processing is a multi-step process involving various stages of decision-making. Rather, the question is what constitutes *a basis for* processing, which the MARCORSEPMAN does not address. As the Court previously held, it is at least equally possible to read this phrase in the regulatory text as referring to the reasons for initiating processing for separation. ECF No. 29 at 17; *see id.* at 12 (explaining that a reviewing court defers to the military's reasonable interpretation of its own regulation, even if the plaintiff presents another reasonable interpretation).

Second, the Navy's interpretation is consistent with the framework of separation proceedings. Involuntary separation begins with the decision of a SCA, who determines whether certain conduct or performance warrants referring an officer to a BOI to show cause for retention. SECNAVINST 1920.6B, encl. (8), ¶ 1.b. After the SCA notifies the officer of "each of the reasons for which he or she is being required to show cause for retention," a BOI is convened. *Id.* ¶ 2.e. The BOI, upon receiving and considering evidence, must decide: (1) whether the reason(s) for separation specified by the SCA are substantiated by the preponderance of evidence, and if so; (2) whether the officer should be recommended for separation, and if so; (3) what characterization of service he or she should receive. *Id.* ¶ 2.k. Because the SCA is solely authorized to review reports of conduct and performance that may warrant separation and to initiate processing for separation, *id.*, encl. (4), ¶¶ 1–2, it is reasonable to construe the time-barred misconduct limitation as prohibiting the SCA from basing his decision on conduct identified to him more than five years earlier. In this way, the limitation protects officers from being referred to show cause proceedings

based on stale reports of misconduct or substandard performance.  As the BCNR noted, the BOI has no authority to determine what conduct "could 'form the basis of processing'" in a particular case because its mandate is to decide only whether the reasons why the officer was referred by the SCA are substantiated (step one).  ECF No. 33 at 2.  If the evidentiary burden is met, then the BOI must recommend retention or separation and, in the case of the latter, a characterization of service (step two).  The time-barred misconduct limitation in SECNAVINST 1920.6B does not speak to what may or may not be considered by the BOI on the issue of retention.  And it would seem relevant for the BOI to consider an officer's prior conduct or performance—both good and bad— to determine whether the history of service warrants retaining the officer.  This mirrors how the Navy treats pre-service misconduct, which the BOI may consider for the purpose of recommending retention or separation.  SECNAVINST 1920.6B, encl. (4), ¶ 10.d.  It strikes the Court as nonsensical to interpret the time-barred misconduct limitation in a way that prohibits a BOI from considering misconduct committed *during an officer's Naval service* to determine whether he or she should *continue to serve in the Navy*, even though the BOI is expressly allowed to consider pre-service misconduct for the same purpose.

The record demonstrates that Mr. Williams' BOI followed this framework.  The SCA initiated Mr. Williams' separation processing on two grounds: failure to demonstrate acceptable qualities of leadership as evidenced by his adulterous relationship and commission of a military offense, specifically adultery and conduct unbecoming an officer, as evidenced by his court-martial conviction.  AR 65.  The BOI determined that the preponderance of evidence substantiated these grounds.  AR 20.  Mr. Williams' prior misconduct came into play only when the BOI moved to the second phase of the proceeding to consider whether he should be retained or separated.  *Id.* Although the BOI's findings worksheet did not certify that it considered prior misconduct only for

purposes of retention, it did indicate that the BOI recommended separation for the reasons stated in step one (failure to demonstrate acceptable qualities of leadership and commission of a military offense).  AR 23.

Third, the Navy's interpretation is endorsed by the ASN who by delegation acts on behalf of the Secretary for all purposes under SECNAVINST 1920.6B.  As such, it has the character of an authoritative agency position.  In addition to explaining the Navy's interpretation, the ASN also "consulted with appropriate authorities in both the Marine Corps and Navy and [was] assured that it is, and has been, [their] practice to only initiate the process of separation upon evidence of performance or conduct that is five years old or less."  ECF No. 70 at 2.  He further explained that it is also established practice for BOIs to consider an officer's entire service record on the question of retention.  *Id.*  This statement is supported by the procedures applicable to involuntary administrative separation set forth in the MARCORSEPMAN since at least 2003.  That manual provides:

> Prior conduct, acts, or performance can be considered in determining whether the board or separation authority will recommend or decide retention or separation.  If such matter is considered on the issue of retention or separation, the record shall include a statement that the separation authority did not consider such matter on the issue of characterization.

MCO P1900.16F, ¶ 1004.4(a)(2).  The administrative record in this case also demonstrates that a consistent practice was used in Mr. Williams' BOI, as both the Government and Mr. Williams took advantage of this procedure during the hearing.  Specifically, while the Government presented evidence of Mr. Williams' prior misconduct to argue for a recommendation of separation, Mr. Williams presented evidence demonstrating the positive aspects of his service, including his character and reputation, accomplishments, and history of high performance that he believed justified retention.  *See* AR 536–623.  The BOI report reflects that the board considered his service

history as a whole.  AR 20–21.

In response, Mr. Williams relies on an allegedly inconsistent interpretation of the time-barred misconduct limitation included in a BOI script published in the LEGADMINMAN in 2014.  *See* ECF No. 110 at 18.  The script reiterates that SECNAVINST 1920.6C imposes a limitation on a BOI considering time-barred misconduct and instructs BOIs to "affirmatively state on the findings and recommendations worksheet that the board did not consider such evidence."  ECF No. 71-2 at 6.  In her response to the Court's third remand order, the ASN explained that the LEGADMINMAN is not mandated by the Marine Corps OJAG.  ECF No. 99 at 1; *see id.* at 2 (describing BOI scripts as administrative aids).  The ASN also stated that the LEGADMINMAN "does not contradict SECNAVINST 1920.6C" because it merely "notes that SECNAVINST 1920.6C 'imposes a limitation' on considering conduct identified more than five years prior to the initiation of separation proceedings but does not describe that limitation."  *Id.* at 1.

At oral argument, Mr. Williams' counsel identified another BOI script published in 2018 in the Marine Corps' Legal Support and Administration Manual ("LSAM"), which similarly characterizes the revised language of the time-barred misconduct limitation in SECNAVINST 1920.6C and instructs the BOI to "affirmatively state on the findings and recommendations worksheet that the board did not consider such evidence."  MCO 5800.16 Ch. 1, Vol. 15, p. 1-84 (Aug. 8, 2018); *see* Pl.'s Notice of Additional Authority, ECF No. 124.  Notably, the findings worksheet included in the BOI script advises the BOI that it may not consider time-barred misconduct "to form the **basis** for separation (substandard performance of duty or misconduct and moral or professional dereliction), as opposed to the phrase "basis for processing" used in the Navy instruction.  *Id.* at p. 1-88 (emphasis in original).  However, the phrase is used in the introductory note of the findings worksheet in a way that clarifies that "basis for separation" is synonymous

with "reason(s) for separation"—*i.e.*, the reasons for referral to the BOI. *See id.* at p. 1-86 ("Below is an example [findings worksheet] using the most common reasons for separation. Each reason listed on the BOI direction letter must be listed on the findings worksheet. The findings worksheet may NOT contain a basis for separation that is not in the BOI direction letter."); *see also id.* at p. 1-60 (BOI Direction Letter; convening a BOI to consider "specific reasons for separation . . . [substandard performance of duty, misconduct, and moral or professional dereliction]" and noting that the bases listed in the letter must match the officer's BOI notification).

Based on the record as a whole, the Court believes that the evidence of the Navy's consistent interpretation and practice is stronger than any evidence that purportedly shows inconsistency. In making this finding, the Court gives greater weight to the ASN's second remand decision, setting forth the Navy's authoritative or official interpretation of SECNAVINST 1920.6B and explaining the Navy's longstanding practice based on consultations with knowledgeable officials in both the Navy and Marine Corps. It also gives greater weight to the fact that the MARCORSEPMAN in effect at the time of Mr. Williams' BOI set forth a procedure consistent with the Navy's interpretation and that such procedure was apparently followed in Mr. Williams' BOI proceeding.

The Court also finds unpersuasive Mr. Williams' contention that the Navy's interpretation is incorrect in light of the holding in *Seifert*. ECF No. 110 at 13. In *Seifert*, the plaintiff, an officer in the Marine Corps, was referred to a BOI following imposition of a NJP stemming from an incident of domestic abuse. 555 F. Supp. 2d at 6. In addition to four of the eleven allegations made in connection with the plaintiff's NJP, the BOI substantiated four offenses that occurred more than five years before the SCA initiated processing for separation. *Id.* On the BOI's findings worksheet, the board recommended the plaintiff be involuntarily retired for the reasons listed in

step one of the worksheet, a list which included the time-barred incidents along with the NJP

offenses. *Id.* at 14. The plaintiff argued, as Mr. Williams does here, that the BOI's consideration

of the time-barred conduct in recommending separation violated SECNAVINST 1920.6B. *Id.* at

8. In response, the Government argued that the instruction permitted the BOI to consider matters

more than five years old so long as "those matters did not form the sole basis for the BOI's

recommendation of separation."[5] *Id.* at 9. The court interpreted the term "basis" in the time-barred

misconduct limitation to mean "predominance, not exclusivity," and thus held that the BOI acted

contrary to regulation by basing its decision to recommend retirement indiscriminately on both the

conduct that resulted in the referral to the BOI and on time-barred misconduct. *Id.* at 14. The

record was silent as to "which, if any, of its findings of misconduct by the plaintiff were foremost

in [the BOI] members' minds when they voted to recommend separation." *Id.* at 15. Because it

was not "clear from the record that time-barred conduct considered by [the] BOI in determining

whether to recommend separation [was] not the primary reason for making that recommendation,"

*id.* at 14, the court remanded the case to the BCNR to make that determination in the first instance,

*id.* at 15.

In the second remand decision, the ASN disagreed with the reasoning of *Seifert* and the

SJACMC's reliance on the case in its advisory opinion. ECF No. 70 at 5. The Court concurs. The

facts of *Seifert* appear to be materially different, and the *Seifert* court's interpretation of

---

[5] Mr. Williams argues that the Government has changed its position in this case, and thus the Navy's interpretation here is an impermissible post hoc rationalization. ECF No. 115 at 15. As the Government correctly notes, this circumstance does not aptly fit the definition of a post hoc rationalization. *See* ECF No. 118 at 4–5. If anything, the difference in positions would be relevant to the question of whether the Navy's interpretation or practice has been consistent and longstanding. On that issue, the Court finds the ASN's second remand decision, the Marine Corps procedures dating from as early as 2003, and the practice followed in Mr. Williams' BOI more probative of consistency than a litigation position taken in a separate, distinguishable case.

SECNAVINST 1920.6B appears to conflate the distinct decision-making points of determining a basis for processing an officer for separation (initially identified by the SCA and then substantiated by the BOI under step one) and recommending an officer for separation under step two. *See Seifert*, 555 F. Supp. 2d at 13 (quoting the regulatory text of the limitation—"*shall not* form the basis for processing"—and concluding that it applies to "the basis for [the BOI's] recommendation of separation" (emphasis in original)).   In any event, the *Seifert* court did not hold that SECNAVINST 1920.6B prohibits a BOI from considering time-barred conduct in any stage of the BOI proceeding, as Mr. Williams contends in this case.   Even assuming *Seifert* is correct, the Court agrees with the ASN that Mr. Williams' BOI would satisfy the court's standard.   Unlike in *Seifert*, Mr. Williams' BOI findings worksheet identifies under step one only the reasons for separation that were identified by the SCA in Mr. Williams' notice and referred to the BOI for adjudication. AR 22.   It states the BOI recommended separation under step two "for the reason(s) listed" in step one.   AR 23.   The BOI's report further confirms that its consideration of prior misconduct was only relevant to the issue of retention.   AR 20.

**B.     The BCNR and ASN Did Not Err in Concluding that Mr. Williams Received Sufficient Notice of His BOI Proceeding.**

The parties next dispute whether Mr. Williams received adequate notice of his BOI hearing. Mr. Williams contends that his show cause notice failed to identify the 1999 and 2002 misconduct, which he contends the BOI considered as part of "a pattern of misconduct" and an unstated bases for separation.   ECF No. 110 at 113–14; ECF No. 115 at 9.   The Government responds that SECNAVINST 1920.6B requires an officer to receive notice only of the basis for convening the BOI—*i.e.*, the reasons why he or she is required to show cause for retention—not all evidence that may be considered on the separate issue of retention.   ECF No. 113 at 19.

An officer's right to notice in separation for cause proceedings is statutorily defined.   Under

10 U.S.C. § 1185(a)(1), "each officer required under section 1181 of this title to show cause for retention on active duty . . . shall be notified in writing, at least 30 days before the hearing of his case by a [BOI], of the reasons for which he is being required to show cause for retention on active duty."  Department of Defense Instruction ("DoDI") 1332.30 implements the notice requirement and similarly provides that an officer must be "notified in writing, at least 30 days before [a BOI] hearing, of the reasons for which he or she is required to show cause for retention in military service and of the least favorable characterization of discharge for which the officer may be recommended."  DoDI 1332.30, encl. (5), ¶ 4.a (Dec. 11, 2008) (incorporating Change 1, Mar. 29, 2010).  The Navy has also implemented an essentially identical notice requirement for BOI proceedings.  *See* SECNAVINST 1920.6B, encl. (8), ¶ 2.e.

The Court agrees with the Government that the plain language of the relevant statutory and regulatory notice provisions do not require that an officer be given notice of all evidence to be considered at a BOI on the issue of whether he or she should be retained or separated.  Section 1185, DoDI 1332.30, and SECNAVINST 1920.6B each speak to notice of the "reasons for which [the officer] is being required to show cause for retention."  10 U.S.C. § 1185(a)(1); *see* DoDI 1332.30, encl. (5), ¶ 4.a; SECNAVINST 1920.6B, encl. (8), ¶ 2.e.  In other words, the notice must identify the bases for initiating separation processing.  As discussed above, the BOI determines in step one whether the facts supporting reasons for the referral by the SCA are substantiated by the preponderance of evidence.  Section 1185, DoDI 1332.30, and SECNAVINST 1920.6B do not speak specifically to notice of the reasons why a BOI may recommend separation or a particular characterization of service, nor do they speak more broadly to all evidence that may be presented at the BOI hearing.  These determinations are made, respectively, in step two.

Here, the SCA provided written notice to Mr. Williams on February 18, 2005, that a BOI

would be convened to make a recommendation on his retention in the Marine Corps. It identified the "specific reasons for separation to be considered" by the BOI: failure to demonstrate acceptable qualities of leadership and his general court-martial conviction, both stemming from his adulterous relationship. AR 65. Other documents in the record establish that these reasons were "the specific bases for referring the case to the [BOI]," AR 25, and correspond both with the BOI's recitation of the reasons for showing cause for retention and its findings on step one, *see* AR 19, 22. Accordingly, the notice complied with statutory and regulatory requirements.

Mr. Williams' contrary argument again conflates the BOI's step one and step two determinations. He argues that because a pattern of conduct can serve as a reason for initiating separation processing it must have been considered as such in his BOI hearing, thus triggering the notice requirements. ECF No. 110 at 14–15. But as discussed above, this contention is specifically refuted by the BOI's report, which expressly states that prior incidents of misconduct were considered '[o]n the issue of retention," AR 20, and the findings worksheet which indicates that the BOI recommended separation for the same reasons enumerated in Mr. Williams' notice, AR 22, 23.[6] Nor is the Court persuaded by Mr. Williams' unfounded suggestion that the SCA

---

[6] Mr. Williams' argument also is belied by the verbatim transcript of the BOI hearing, on which Mr. Williams relies. ECF No. 110 at 14 (citing BOI Hr'g Tr., ECF No. 90-1). Mr. Williams did not submit the verbatim transcript to the BCNR (or ASN), and thus it is not part of the Administrative Record in this case and is beyond the scope of the Court's review. *See* ECF No. 96 at 13–15 (summarizing the history of the parties' positions on the verbatim transcript). For the sake of completeness, however, the Court notes that Mr. Williams' reference to the "pattern of misconduct" is taken out of context. It is true that in closing argument, the Government's counsel argued that Mr. Williams' "whole situation is about . . . a severe pattern of integrity problems." ECF No. 90-1 at 83. But this was presented as a step two argument because "the first issue" (*i.e.*, step one) was not in contention due to Mr. Williams' guilty plea. *Id.* at 27. It was "the second issue of whether or not [Mr. Williams] ought to be separated or retained" (*i.e.*, step two) that was in dispute. On that issue, counsel intended to introduce a pattern of misconduct. *Id.* at 29 (arguing that on step two the BOI "may and must, in fact, consider not only the misconduct that is the reason for separation, but the entire career of [Mr. Williams] including any other possible misconduct").

attempted to "hide the ball" by intentionally failing to advise Mr. Williams of his specific reasons for separation.  ECF No. 115 at 7; *id.* at 8–9; *see Sickels v. Shinseki*, 643 F.3d 1362, 1366 (Fed. Cir. 2011) (holding that "in the absence of clear evidence to the contrary, [a] court will presume that public officers have properly discharged their official duties"); *Dodson v. United States Gov't, Dep't of Army*, 988 F.2d 1199, 1204 (Fed. Cir. 1993) ("[M]ilitary administrators are presumed to act lawfully and in good faith like other public officers, and the military is entitled to substantial deference in the governance of its affairs.").

Indeed, as both the BCNR and ASN noted, the facts do not support the conclusion that Mr. Williams was unfairly surprised by the presentation of prior misconduct evidence at his BOI hearing.  ECF No. 33 at 4; ECF No. 70 at 7–8.  Mr. Williams was provided with a military lawyer and was also represented by private counsel.  ECF No. 70 at 7.  His counsel should have been on notice that the MARCORSEPMAN specifically permitted the BOI to consider prior conduct, acts, or performance in determining whether to recommend Mr. Williams for retention or separation. *Id.* (citing MCO P1900.16F, ¶ 1004.4(a)(2)).  In fact, Mr. Williams was apparently prepared to defend his service record, submitting into evidence a character reference, documentation of numerous awards and commendations during his long active-duty career, as well as several favorable fitness reports including one that specifically addressed his 1999 NJP (AR 606).  AR 536–623.  Moreover, the BOI report indicates that Mr. Williams "admitted to all of the acts of misconduct detailed in the notification letter, as well as the two prior incidents of misconduct that were considered on the issue of retention," AR 2, and neither the BOI report nor Mr. Williams' rebuttal to that report noted any objection by counsel to the introduction of such evidence or the adequacy of notice.  AR 19–24, 36–37; *see* ECF No. 33 at 4; ECF No. 70 at 8 (citing *Snakenberg v. United States*, 15 Cl. Ct. 809, 813 (1988)).

**C.     The BCNR Was Authorized to Issue a Denial Decision Without Forwarding the Case to the ASN for Final Action.**

The parties next dispute whether the BCNR violated SECNAVINST 5420.193 by denying Mr. Williams relief without first submitting his case to the ASN for a final decision.  Mr. Williams contends that SECNAVINST 5420.193 limits the BCNR's authority to take final action on an application when a "proper naval authority" disagrees with the BCNR's recommendation.  ECF No. 110 at 11.  He argues that the SJACMC is a proper naval authority and thus, because the SJACMC's advisory opinion recommended correction of Mr. Williams' record, the BCNR had to forward its decision denying correction to the ASN for final approval.  *Id.*  The Government disagrees with Mr. Williams' reading.  It argues that SECNAVINST 5420.193 requires the BCNR to forward to the ASN only those cases where the BCNR intends to grant corrective action contrary to the comments of a proper naval authority, not those where (as here) it denies relief.  ECF No. 113 at 24; *see* ECF No. 70 at 1–2.

SECNAVINST 5420.193 establishes procedures for the BCNR to follow in reviewing applications for correction of naval and marine records pursuant to 10 U.S.C. § 1552.  The regulation delegates authority to the BCNR to take final corrective action on behalf of the Secretary when warranted, subject to certain exceptions.  These excepted circumstances include where:

> (a) Comments by proper naval authority are inconsistent with the Board's recommendation; (b) The Board's recommendation is not unanimous; or (c) [The case] is in the category of petitions reserved for decision by the Secretary of the Navy.

SECNAVINST 5420.193, encl. (1), ¶ 6.e(1).  Some categories of petitions reserved for the Secretary's decision include those "involving records previously reviewed or acted upon by the Secretary wherein the operative facts remained substantially the same" and those "by former commissioned officers . . . to change the character of, and/or the reason for, their discharge."  *Id.*

26

¶¶ 6.e(2)(a)–(b).  If the BCNR lacks authority to take final corrective action under one of these exceptions, the regulation provides that the ASN "will direct such action as he or she determines to be appropriate."  *Id.* ¶ 7.a.

The Court agrees with the Government that, by its plain language, SECNAVINST 5420.193 did not require the BCNR to forward Mr. Williams' case to the ASN for a final decision because the BCNR denied in full the correction Mr. Williams requested.  *See* ECF No. 70 at 1–2. Regardless of whether the SJACMC's advisory opinion provided a contrary recommendation or whether Mr. Williams' petition would otherwise fall in a category of petitions reserved for the Secretary's decision, SECNAVINST 5420.193 ¶¶ 6.e(1)(a), (c), the limitations on the BCNR's delegation of authority are expressly confined to cases where the BCNR seeks to take "final corrective action," *id.* ¶ 6.e(1).  Indeed, the title of the provision at issue—"Delegation of Authority to Correct Certain Naval Records"—confirms as much.[7]  *Id.* ¶ 6.e.  And any doubt about whether the authority to "take final corrective action" could encompass the BCNR's authority to deny a correction of records is dispelled by the following provision, which sets forth procedures for action by the Secretary.  That provision directs a record of the BCNR's proceedings to be forwarded to the Secretary for further action, "except in cases finalized by the Board under the authority delegated in Section 6e[] *and those denied by the Board without a hearing*."  *Id.* ¶ 7.a (emphasis added).  In this case, the BCNR did not recommend corrective action for Mr. Williams, but rather denied his petition without a hearing.  AR 1, 4.  Thus, the BCNR had no obligation under SECNAVINST 5420.193 to forward its decision to the ASN for review and approval.

In support of his position, Mr. Williams relies on a memorandum from a former ASN dated

---

[7] A "correction" is defined as "making right what is wrong," which suggests the BCNR need only seek review by the Secretary in certain circumstances where it recommends fixing an error or injustice.  *Correction*, Black's Law Dictionary (11th ed. 2019).

September 4, 2014, that purportedly sets forth a contrary interpretation of SECNAVINST 5420.193.  ECF No. 115 at 21.  The memorandum relates to a BCNR petition of a Marine Corps captain.  The ASN determined that the captain's petition should have been forwarded to the ASN for action because the BCNR reached a decision that was inconsistent with an advisory opinion of the Office of the Judge Advocate.  *Id.*  Importantly, the memorandum does not indicate whether the BCNR decision at issue granted any corrective action or whether, like here, it simply denied the captain's petition.  Without knowing that fact, it is not clear to the Court that the memorandum supports Mr. Williams' reading of the regulation.[8]  But to the extent it does similarly interpret the BCNR's delegation of authority, the memorandum is inconsistent with the plain language of SECNAVINST 5420.193 for the reasons discussed above.

Regardless, even if the BCNR failed to follow SECNAVINST 5420.193 in Mr. Williams' case, relief must be denied because Mr. Williams has not shown he was harmed by this procedural error.  In a military pay action, "it is not enough for the plaintiff to show merely that an error or injustice was committed in the administrative process," he must demonstrate "that the defect substantially affected the decision to separate him or relieve him from active duty . . . ."  *Christian v. United States*, 337 F.3d 1338, 1343 (Fed. Cir. 2003) (quoting *Hary v. United States*, 618 F.2d 704, 707 (Ct. Cl. 1980)); *see Wagner v. United States*, 365 F.3d 1358, 1365 (Fed. Cir. 2004).  Here, based in part on Mr. Williams' delegation of authority argument, the Court remanded the matter (a second time) directly to the ASN to explain whether SECNAVINST 5420.193 applied in Mr. Williams' case.  ECF No. 66 at 1.  The Court also directed the ASN to consider, comment upon,

---

[8] Based on its own research, the Court located an opinion from subsequent litigation that indicates that the BCNR's decision granted corrective action in part, but not all aspects of the corrective action recommended in the advisory opinion.  *See Stewart v. Stackley*, 251 F. Supp. 3d 138, 148–50 (D.D.C. 2017).

and correct any of the alleged errors, whether substantive or procedural, in the BCNR's consideration of Mr. Williams' application. *Id.* at 1–2. The ASN did not find any error by the BCNR or BOI, nor did he find it unjust that Mr. Williams was separated just shy of his retirement. ECF No. 70 at 2–9. Thus, the second remand accomplished what Mr. Williams contends was deficient in the original BCNR proceedings, and the ASN reached the same outcome as the BCNR.

**D.     The BCNR And ASN Did Not Arbitrarily and Capriciously Ignore Purportedly Similar Cases of Officer Misconduct or Other Arguments Related to Mr. Williams' Injustice Claim.**

Lastly, the parties dispute whether the BCNR and ASN arbitrarily and capriciously rejected Mr. Williams' injustice claim. Mr. Williams contends that his separation so close in time to his retirement date constituted a "clear injustice" and that the BCNR ignored allegedly analogous examples of other officers who committed adultery but were discharged without losing their retirement benefits. ECF No. 110 at 25. He also argues that the ASN failed to address his injustice arguments submitted during the second remand. ECF No. 115 at 17–18. The Government responds that the BCNR and ASN properly rejected Mr. Williams' comparators as lacking probative value and that all his injustice arguments were properly considered and rejected. ECF No. 113 at 23; ECF No. 118 at 8.

"'Injustice,' when not also 'error' is treatment by the military authorities that shocks the sense of justice, but is not technically illegal." *Reale v. United States*, 208 Ct. Cl. 1010, 1011 (1976). "[W]hen a correction board fails to correct an injustice clearly presented in the record before it, it is acting in violation of its mandate." *Roth v. United States*, 378 F.3d 1371, 1381 (Fed. Cir. 2004) (quoting *Yee v. United States*, 512 F.2d 1383, 1387 (1975)). In such case, the board's decision is arbitrary and capricious and must be overturned upon review by the court. *Yee*, 512 F.2d at 1387 (citing *Skaradowski v. United States*, 471 F.2d 627 (1973)). The reviewing court

may not, however, "'substitute [its] judgment for the board's when reasonable minds could reach differing conclusions,'" even if it disagrees with the board about "'whether or not a specific situation was unjust.'"  *Grieg v. United States*, 640 F.2d 1261, 1266–67 (Ct. Cl. 1981) (quoting *Snell v. United States*, 168 Ct. Cl. 219, 227 (1964)).  This is especially true where the question involves a determination by the military about "the continued suitability of . . . a commissioned officer."  *Wronke*, 787 F.2d at 1576.

Here, the BCNR and ASN both considered Mr. Williams' injustice claim on remand.  In the first remand order, the Court specifically instructed the BCNR to determine whether Mr. Williams' separation was unjust given his proximity to retirement.  ECF No. 29 at 19.  The BCNR concluded that it was not a clear injustice because, contrary to Mr. Williams' suggestion, there is no "usual practice" of permitting officers who are recommended for involuntary separation to remain on active duty until they qualify for full retirement benefits.  ECF No. 33 at 1.  And the BCNR explained that because separation and retention decisions are made on a case-by-case basis, any allegedly analogous cases cited in Mr. Williams' petition were not probative to a review of his separation.  *Id.* at 4.  To evaluate Mr. Williams' disparate treatment claim, the BCNR reviewed the service record of the female officer with whom Mr. Williams had an affair, concluding that she was treated more harshly than him.  *Id.* at 5.  In light of his misconduct, the Board concluded that permitting Mr. Williams "to retire would be an inappropriate result," *id.* at 6, and that he was "fortunate to have received a general discharge rather than a discharge under other than honorable conditions," *id.* at 5.

In the second remand, the ASN considered the same question as well as the injustice arguments submitted to the ASN by Mr. Williams' counsel.  ECF No. 71-1 at 5–6, 11.  In response, the ASN concurred with the BCNR's conclusion that Mr. Williams' separation was not so

inconsistent with other cases as to constitute an injustice.  ECF No. 70 at 8.  He also explained that there is no "usual practice in similar cases" because BCNR decisions "are fact specific and made on a case-by-case basis."  *Id.*  The ASN noted that the BCNR typically does not consider favorable analogous cases to be relevant since it lacks the ability to investigate the veracity of the underlying evidence or to research whether unfavorable analogous cases also exist.  *Id.*  Notwithstanding, the ASN apparently tasked the SJACMC with locating the cases cited by Mr. Williams, although he noted that even the SJACMC did not rely on comparator cases in its advisory opinion.  *Id.* at 8–9.  In sum, the ASN agreed that Mr. Williams was not treated as harshly as the case most similar to his, which was that of the female officer involved in the affair.  *Id.* at 9.

Mr. Williams has not shown that these conclusions were irrational or based on legal error.  He argues that the BCNR has the authority to investigate analogous cases pursuant to 10 U.S.C. § 1552(a)(3)(C), which directs the BCNR to make "reasonable efforts to obtain" military personnel or medical records applicable to a claim under § 1552 when a petitioner is unable to provide the documents.  ECF No. 110 at 25.  It is unclear, however, whether such provision compels the Board to obtain records of other service members for the purpose of providing comparator cases, as opposed to a circumstance where a petitioner is unable to obtain his or her own personnel and/or medical records necessary to prove his or her claim.  The ASN rationally explained the practical reasons why the Board's authority should not be read so broadly.  As he noted, "[t]he BCNR 'is not an investigative body.  Its function is to consider applications properly before it for the purpose of determining the existence of error or injustice in the naval records of . . . members of the Navy and Marine Corps.'"  ECF No. 70 at 8 (quoting SECNAVINST 5420.193, encl. (1), ¶ 2.b).  Even if a petitioner provides the Board with citations to comparator cases, the ASN explained that the BCNR does not have the authority or the means to determine whether those cases are in fact

analogous and, if so, truly represent the typical outcome for similarly situated service members. *Id.* Mr. Williams does not cite any authority to support application of § 1552(a)(3)(C) to comparator cases.

Mr. Williams' next contention essentially challenges the weight (or lack thereof) afforded by the BCNR and ASN to the allegedly analogous cases he cited. But the narrow review conducted by this Court does not involve the reweighing of evidence. *Heisig*, 719 F.2d at 1157. Here, the record shows that the BCNR and ASN considered the allegedly analogous cases and found them to have little probative value given that the question of retention is fact specific and made on a case-by-case basis. ECF No. 33 at 4; ECF No. 70 at 8. The Court finds no clear error in their judgment. Although the comparators purportedly involved similar misconduct and officers who, like Mr. Williams, were at or near retirement, the Court cannot say that three individual cases necessarily establish a "usual practice" in this type of case. Nor was it unreasonable for the BCNR and ASN to look to the case of the other officer involved in the misconduct that resulted in Mr. Williams' separation to determine whether Mr. Williams was treated unfairly, even though the female officer was not in the same near-retirement stage of her military career.

Finally, Mr. Williams contends that the ASN did not specifically discuss the contention that his separation was punitive in nature. ECF No. 115 at 17–19. On that point, Mr. Williams is correct. The ASN's memorandum responded generally to Mr. Williams' injustice claim and primarily addressed his disparate treatment arguments. ECF No. 70 at 8–9, 11. However, the Court does not believe that fact warrants vacatur or a fourth remand in this case. *See* ECF No. 96 at 8. It is abundantly clear from the BCNR's and ASN's remand decisions that they found no injustice from Mr. Williams' separation so close in time to his planned retirement and rejected the notion that the outcome of the BOI was disproportionate to the underlying misconduct. *See* ECF

No. 33 at 5 (explaining that Mr. Williams was fortunate to have received a general discharge "given the nature and scope of [his] misconduct"); *id.* at 6 (concurring with the endorsements of the BOI's report "concerning the appropriateness of [Mr. Williams'] involuntary separation . . . with a general discharge"). Indeed, the BCNR expressly found that "permitting [Mr. Williams] to retire would be an inappropriate result." *Id.* at 6. The ASN found no error in the BCNR's consideration of the Mr. Williams' injustice arguments. The Court therefore finds that the record is sufficient to facilitate meaningful judicial review, and that remand to address Mr. Williams' injustice claim again would serve no useful purpose nor would it likely change the result. *State Farm*, 463 U.S. at 43; *Corus Staal BV v. United States*, 502 F.3d 1370, 1373–74 (Fed. Cir. 2007).

## IV.  CONCLUSION

For the reasons set forth above, Mr. Williams' Motion for Judgment on the Record (ECF No. 110) is **DENIED**, and the Government's Motion for Judgment on the Record (ECF No. 113) is **GRANTED**. The Clerk is directed to enter judgment accordingly.

**SO ORDERED.**

Dated: November 30, 2022                                   */s/ Kathryn C. Davis*
                                                                          KATHRYN C. DAVIS
                                                                          Judge